STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Respondent-Petitioner,

v.

Franklin GILLETTE and V. Thomas Ostlund, Defendants-Appellants.

Supreme Court

*No. 00–0637. Oral argument January 10, 2002.—Decided March 29, 2002.*

2002 WI 31

(Also reported in 641 N.W.2d 662.)

564

For the plaintiff-respondent-petitioner there were briefs by *Claude J. Covelli* and *Boardman, Suhr, Curry & Field LLP,* Madison, and oral argument by *Claude J. Covelli.*

For the defendants-appellants there was a brief by *Gregory J. Egan* and *Parke O'Flaherty, Ltd.,* La Crosse, and oral argument by *Gregory J. Egan.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] affirming in part and reversing in part a judgment of the Circuit Court for La Crosse County, Dennis G. Montabon, Judge.

¶. 2. The question presented in this case is complex: Is an insured who is a Wisconsin resident and who has underinsured motorist coverage in a policy issued in Wisconsin (which policy promises to pay "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle") entitled to recover noneconomic damages for pain and suffering from that Wisconsin insurance company for bodily injury arising from an automobile accident that occurred in Manitoba, Canada, between the insured and a Manitoba driver, when Manitoba law precludes the recovery of noneconomic damages? The circuit court answered the question no; the court of appeals answered the question yes. We affirm the court of appeals and answer the question yes, although we reach this result by a different path.

¶ 3. The circuit court granted summary judgment to State Farm Mutual Automobile Insurance Company, declaring that Franklin Gillette and V. Thomas Ostlund were not legally entitled to underinsured motorist coverage from State Farm because their claimed noneconomic damages for pain and suffering were precluded by the automobile liability law of Manitoba, Canada, where the accident occurred.[2]

---

[1] *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2001 WI App 123, 246 Wis. 2d 561, 630 N.W.2d 527.

[2] The circuit court also declared that Gillette and Ostlund were not entitled to uninsured motorist coverage. The court of appeals affirmed this portion of the circuit court's judgment.

¶ 4. The court of appeals reversed this portion of the circuit court's judgment, concluding that Gillette and Ostlund were entitled to underinsured motorist coverage from State Farm. According to the court of appeals, only two requirements must be met to trigger the underinsured motorist benefits: (1) causal negligence on the part of an underinsured motorist, and (2) damages that result from the accident but are not covered by the at-fault motorist's insurance. Because the parties agree that these two requirements are met in the present case, the court of appeals ruled that Gillette and Ostlund were legally entitled to the noneconomic damages they sought from State Farm.[3] The court of appeals reasoned that these two factors triggered the State Farm underinsured motorist coverage independent of any restrictions on recovery of damages from the underinsured motorist that were imposed by the law of the jurisdiction in which the accident occurred.[4] The court of appeals concluded that the phrase "legally entitled to collect" did not preserve for State Farm all of the Manitoba tortfeasor's rights or immunities.[5]

¶ 5. We interpret the phrase "legally entitled to collect from the owner or driver of an underinsured motor vehicle" under Wisconsin contract choice of law rules. The interpretation of the phrase "legally entitled to collect" from an underinsured motorist arises in a variety of issues, including statutes of limitations; a

---

The parties do not seek review of this portion of the court of appeals' decision, and we do not address this issue.

[3] *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2001 WI App 123, ¶ 30, 246 Wis. 2d 561, 630 N.W.2d 527.

[4] *Id.* at ¶¶ 29–30.

[5] *Id.* at ¶ 31.

tortfeasor's immunity from liability, such as governmental immunity; comparative negligence; and a limitation on the amount or type of damages. Each issue must be analyzed separately to determine whether an insurance company should be treated the same as or different than an underinsured motorist. Different considerations may apply to each issue presented in a particular case.[6]

---

[6] Gillette and Ostlund analogize the present case to those cases in which the tortfeasor is immune from liability under the law of the state. They characterize the Manitoba law as immunizing the tortfeasor from liability for noneconomic damages. The inability to recover noneconomic damages in Manitoba does not stem, however, from an immunity that prevents enforcement of a tort cause of action against a particular tortfeasor. Rather, the inability to recover noneconomic damages in Manitoba stems from the law that provides that a tortfeasor is liable for some damages but not for other damages. We do not address the issue of immunity because immunity may present different considerations than addressed in the present case relating to damages.

Gillette and Ostlund cite numerous cases in which a tortfeasor is immune from liability and yet the court holds the insurance company liable for damages incurred. *See, e.g., Gen. Accident Fire and Life Assurance Corp., Ltd. v. Klatt,* 460 N.E.2d 339, 341 (Ill. Ct. App. 1984) (interspousal immunity in Illinois no bar to recovering under uninsured motorist coverage in Illinois); *Sumwalt v. Allstate Ins. Co.,* 466 N.E.2d 544, 545–46 (Ohio 1984) (parent-child immunity in Ohio no bar to recovering under uninsured motorist coverage in Ohio); *Torres v. Kansas City Fire and Marine Ins. Co.,* 849 P.2d 407, 411 (Okla. 1993) (workers' compensation immunity in Oklahoma no bar to recovering under uninsured motorist coverage by personal representative of decedent killed by negligence of coemployee/tortfeasor in Oklahoma).

Professor Widiss states that from the standpoint of the insured who is injured by a negligent tortfeasor, there is no meaningful difference between inability to recover damages

¶ 6. We conclude that the only reasonable interpretation of the policy for purposes of calculating damages in the present case is that "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" means that an insurance company will compensate an insured for damages for bodily injury that the insured actually incurs for which an underinsured motorist is liable to the insured under the applicable law up to the policy liability limits.

¶ 7. We further conclude that Wisconsin tort choice of law rules govern which jurisdiction's law determines the damages an insured is legally entitled to collect from an underinsured motorist. Applying Wisconsin choice of law rules in the present case instructs us to look to Wisconsin law, the law of the forum. Wisconsin has the most significant contacts to the present case. Wisconsin is the jurisdiction where the injured persons reside and where the insurance policy was issued by a Wisconsin insurance company to Wisconsin insureds. Applying Wisconsin law comports with Wisconsin's public policy of compensating victims of tortfeasors. Under Wisconsin law, Gillette and Ostlund are legally entitled to collect noneconomic damages that arise from an automobile accident, and consequently, Gillette and Ostlund are legally entitled to collect noneconomic damages from State Farm on the basis of the underinsured motorist coverage.

---

because the tortfeasor is underinsured or because the tortfeasor is immune. In contrast, he comments that "there is no reason to allow a recovery of underinsured motorist insurance when an individual is fully indemnified." 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Coverage* § 34.2, at 154–55 (Rev. 2d ed. 2001).

¶ 8. We caution, however, that neither the law of the forum nor the law of the place of the accident is the choice of law rule applicable to every fact situation or to every issue that might arise regarding the "legally entitled to collect" language. The law of one jurisdiction could be invoked with respect to some issues and in some fact situations and the law of another jurisdiction invoked in respect to other issues and other fact situations.

¶ 9. We further conclude that the State Farm policy exhaustion requirement is satisfied, because the amount of recovery for noneconomic damages from the Manitoba underinsured motorist is zero. Therefore in the present case the limits of liability of all bodily injury policies that apply for noneconomic damages have been used up.

¶ 10. We shall first state the relevant facts (Part I) and then set forth the State Farm policy and a summary of the parties' arguments (Part II). We discuss the following three questions that are necessary to resolve the question of law presented: Which jurisdiction's law governs the interpretation of the insurance policy (Part III)? How is the policy language "legally entitled to collect" from an underinsured motorist to be interpreted (Part IV)? Which jurisdiction's law governs the amount of damages Gillette and Ostlund are legally entitled to collect from an underinsured motorist (Part V)? Finally, we consider the effect of the policy exhaustion provision that precludes the payment of underinsured motorist benefits until the limits of liability of all bodily injury policies have been used up by payment, judgments, or settlements (Part VI).

570

## I

¶ 11. The relevant facts in the present case are undisputed. V. Thomas Ostlund, a Wisconsin resident, was driving his mother's pickup truck in Manitoba, Canada, on October 11, 1995. Franklin Gillette was a passenger in the pickup truck.

¶ 12. While stopped, the pickup truck was struck by another truck driven by Norman Unrau, a resident of Manitoba. The parties agree that Unrau, the under-insured motorist, was negligent and that the accident caused physical injuries to both Gillette and Ostlund.

¶ 13. Unrau's vehicle was registered in Manitoba and insured by the Manitoba Public Insurance Corpo-ration (MPIC) as required by Manitoba law. The parties agree that Manitoba law governing motor vehicle acci-dents between a Manitoba insured and a non-Manitoba claimant provides at-fault liability coverage that pays compensable damages, including medical care, income replacement, and permanent impairment damages.[7] MPIC does not, however, permit the recovery of non-economic damages from the driver that are now sought by Gillette and Ostlund from State Farm.[8]

¶ 14. At the time of the accident, State Farm insured the pickup truck driven by Ostlund, but the policy on this truck did not include underinsured mo-torist coverage. Ostlund had, however, two State Farm policies in force on motor vehicles he owned but that

---

[7] The parties refer the court to Manitoba Public Insurance Corporation Act L.R.M. ch. P215 (1987) (Can.).

[8] The parties refer the court to Manitoba Public Insurance Corporation Act L.R.M. ch. P215, § 72 (1987) (Can.) (compen-sation under this act stands in lieu of all rights and remedies arising out of bodily injuries to which this act applies and no action in that respect may be admitted before any court).

were not involved in the accident. Each policy included identical underinsured motorist coverage with $100,000 per person and $300,000 per accident limits of liability.[9]

¶ 15. At the time of the circuit court's decision to grant State Farm's motion for summary judgment, MPIC had paid Ostlund and his subrogated health insurance carrier $26,833.51. MPIC had not yet paid Gillette for his filed claim.

## II

¶ 16. The key language in the State Farm policy in issue provides that State Farm will pay "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle."[10] An "underinsured motor vehicle" is defined in the policy as a motor vehicle the use of which is insured for bodily injury liability and whose liability limits are less than the amount of the insured's damages or have been reduced by payments to other than the insured to less than the amount of the insured's damages. The policy also provides that the most State Farm will pay is the lesser of (1) the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by or for the person who is or may be held legally liable for the bodily injury, or (2) the liability limits set forth in the policy. The policy provides that the insurance company and the insured must

---

[9] Wisconsin Stat. § 632.32(4m) (1999–2000) requires an insurance company to notify an insured of the availability of underinsured motorist coverage and requires limits of liability of at least $50,000 per person and $100,000 per accident.

[10] The parties agree that Gillette and Ostlund qualify as "insureds" under the State Farm policies.

agree whether the insured is legally entitled to collect damages from the driver of an underinsured motor vehicle and if so in what amount. The policy is in effect in the United States and Canada.

¶ 17. The State Farm underinsured motor vehicle policy states in relevant part as follows:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.
>
> THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.
>
> *Underinsured motor vehicle* — means a land motor vehicle:
>
> 1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
>
> 2. whose limits of liability for bodily injury liability:
>
>> a. are less than the amount of the *insured's* damages; or
>>
>> b. have been reduced by payments to *persons* other than the *insured* to less than the amount of the *insured's* damages.
>
> . . . .

**Limits of Liability**

**Coverage W**

. . . .

 5. The most we pay will be the lesser of:

 a. the difference between the amount of the *insured's* damages for *bodily injury*, and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

 b. the limits of liability of this coverage.

(Emphasis in original.)

¶ 18. The State Farm policy poses the following two questions to be decided in underinsured motor vehicle cases:

Two questions must be decided by agreement between the *insured* and us:

 1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and

 2. If so, in what amount?

(Emphasis in original.)

¶ 19. We summarize the arguments of each party as follows:

¶ 20. First, State Farm's position asserts that "legally entitled to collect" from an underinsured motorist means that an insured's tort cause of action against the

574

underinsured motorist is the proper measure of damages against State Farm under the underinsured motorist coverage. According to State Farm, an insured must have a viable tort claim against an underinsured motorist under the law of the jurisdiction governing tort liability. State Farm recognizes, however, that at least one bar to a cause of action against an underinsured motorist, namely, the tort statute of limitations, does not bar an insured from recovering from State Farm under the underinsured motorist coverage.[11]

¶ 21. State Farm in effect argues that (1) the insurance policy expressly incorporates by reference the substantive tort law applicable to determining what damages an insured is legally entitled to collect from an underinsured motorist; (2) the damages an insured is legally entitled to collect in the present case are governed by the laws of Manitoba, the jurisdiction where the accident took place and the residence of the underinsured motorist; (3) under Manitoba law the damages for bodily injury an insured is entitled to collect from the motorist do not include noneconomic damages such as pain and suffering; and (4) because Gillette and Ostlund have no legal entitlement under Manitoba law to compensation for noneconomic damages from the motorist, they cannot recover noneconomic damages from State Farm under the underinsured motorist coverage of the State Farm policy.

¶ 22. Gillette's and Ostlund's position can be summarized as follows: Gillette and Ostlund argue that "legally entitled to collect" from an underinsured motorist means that an insured need prove only causal negligence on the part of the underinsured motorist and that

---

[11] *See, e.g., Sahloff v. Western Cas. & Surety Co.,* 45 Wis. 2d 60, 69, 171 N.W.2d 914 (1969).

damages resulted from the accident that the underinsured motorist's insurance does not cover. They point out that State Farm does not dispute that the Manitoba driver is at fault and that Gillette and Ostlund have suffered damages that the Manitoba driver's insurance does not cover. Because Manitoba law, unlike Wisconsin law, does not award damages for pain and suffering, Gillette and Ostlund contend that State Farm should pay these damages up to policy liability limits.

¶ 23. Gillette and Ostlund argue in effect that (1) State Farm does not stand in the shoes of an underinsured motorist and does not have all the defenses available to that motorist; (2) an insured need prove only causal negligence on the part of the underinsured motorist and that damages resulted from the accident that the motorist's insurance does not cover; (3) the damages Gillette and Ostlund are legally entitled to collect under Wisconsin law include noneconomic damages, such as pain and suffering; (4) applying Manitoba law to determine their damages contravenes Wisconsin public policy; and (5) therefore they are entitled to recover compensation for noneconomic damages from State Farm under the underinsured motorist coverage.

III

¶ 24. We turn first to decide which jurisdiction's law governs the interpretation of the insurance policy. The parties agree, and we conclude, that Wisconsin contract law governs the interpretation of this insurance policy and that the interpretation of an insurance policy ordinarily presents a question of law that this

court determines independent of the circuit court and court of appeals, but benefiting from their analyses.[12]

¶ 25. An insurance policy is a contract. A claim against the insurance company for underinsured motorist coverage is "an action on the policy and sounds in contract," although an underlying tortious injury is also involved.[13]

¶ 26. To determine which jurisdiction's law applies to a contractual dispute, we look to Wisconsin contract choice of law rules. In contractual disputes, Wisconsin courts apply the "grouping of contacts" rule,[14] that is, that contract rights must be "determined by the law of the [jurisdiction] with which the contract has its most significant relationship."[15]

¶ 27. The insurance policy in the present case was issued in Wisconsin between State Farm, an insurance company doing business in Wisconsin, and Ostlund, a Wisconsin resident. The policy covers cars registered in Wisconsin. Wisconsin is the state with which the policy has its most significant relationship. Wisconsin law, therefore, governs the interpretation of the insurance policy in the present case.

---

[12] *Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 9, 245 Wis. 2d 134, 628 N.W.2d 916.

[13] *Sahloff,* 45 Wis. 2d at 70. *See Abraham v. General Cas. Co.,* 217 Wis. 2d 294, 307, 576 N.W.2d 46 (1998) (claim arises from alleged breach of underinsured motorist insurance policy although claim would not have come to fruition without the injury out-of-state).

[14] *Haines v. Mid-Century Ins. Co.,* 47 Wis. 2d 442, 449, 177 N.W.2d 328 (1970).

[15] *American Std. Ins. Co. v. Cleveland,* 124 Wis. 2d 258, 267, 369 N.W.2d 168 (Ct. App. 1985).

¶ 28. Under Wisconsin law, the words of an insurance policy are given their common and ordinary meaning.[16] An insurance policy is interpreted as a reasonable person of ordinary intelligence in the position of an insured would understand it.[17] When a policy is susceptible to more than one interpretation by a reasonable person of ordinary intelligence in the position of an insured, the insurance policy must be interpreted against the insurance company, the drafter of the document, and in favor of coverage for the insured.[18]

## IV

¶ 29. We next address how the policy language "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" is interpreted under Wisconsin law. The parties disagree on the answer to this question. Case law supports both parties' interpretations,[19] but the analysis in the cases is limited and the cases are unpersuasive.

[16] *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150; *Henderson v. State Farm Mut. Auto. Ins. Co.*, 59 Wis. 2d 451, 459, 208 N.W.2d 423 (1973).

[17] *Maas v. Ziegler,* 172 Wis. 2d 70, 81–82, 492 N.W.2d 621 (1992); *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975).

[18] *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 10, 485 N.W.2d 217 (1992); *Garriguenc v. Love,* 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975).

[19] *See, e.g., United States Fid. & Guar. Co. v. Preston,* 26 S.W.3d 145, 147 (Ky. 2000) (setting forth interpretations of uninsured motorist policies using the phrase "legally entitled to recover"); *West Am. Ins. Co. v. Popa,* 723 A.2d 1, 6 (Md. 1998) (setting forth interpretations of an underinsured motorist

¶ 30. State Farm reads the phrase "legally entitled to collect" from an underinsured motorist to require coverage only when an insured can prove each element of a tort claim against the underinsured motorist.[20] The insured's benefits under the policy are, according to State Farm, defined by the insured's claim against the underinsured motorist. This interpretation does not, however, fully answer the question presented.

¶ 31. When an insured sues an insurance company for underinsured motorist coverage, contract law and tort law converge. Contract law applies to interpret the insurance policy, but an insured's right to underinsured motorist benefits hinges on the existence of a tort cause of action against the underinsured motorist.

policy using the phrase "legally entitled to recover"); *Vega v. Farmers Ins. Co.,* 918 P.2d 95, 102, 103 n.14 (Ore. 1996) (setting forth interpretations of an uninsured/underinsured motorist statute using the phrase "legally entitled to recover").

The parties and the courts appear to treat underinsured and uninsured cases interchangeably for purposes of interpreting the phrase "legally entitled to recover." 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Coverage* 147 (Rev. 2d ed. 2001). Furthermore, the cases do not seem to differentiate between the phrases "legally entitled to recover" and "legally entitled to collect."

Professor Widiss states that "[t]hus far, there have been relatively few appellate decisions addressing questions involving underinsured motorist insurance that have turned on the meaning to be accorded to the phrase "legally entitled to recover." 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Coverage* § 34.1, 149 n.5 (Rev. 2d ed. 2001).

[20] For cases adopting this interpretation, see cases cited in *Popa,* 723 A.2d at 6–7; *Vega,* 918 P.2d at 103 n.14.

¶ 32. Some defenses, such as the tort statute of limitations, are available to an underinsured motorist but are not available to an insurance company.[21] Different considerations apply to the liability of an underinsured motorist under tort law and the liability of the insurance company under contract law.

¶ 33. Gillette and Ostlund read the phrase "legally entitled to collect" from an underinsured motorist more broadly as requiring an insured to prove only the basic elements of a tort claim, that is, fault and damages.[22] This interpretation, however, does not fully answer the question presented either. Legal principles define fault and damages, but which principles apply and when they apply are open questions under Gillette's and Ostlund's interpretation. It is unclear, for example, the effect under this interpretation of the state's comparative negligence law on an insured's rights under the underinsured motorist coverage.

¶ 34. Thus the parties' different interpretations of the policy illustrate what this court has noted previously, that is, that underinsured motorist coverage presents something of a "legal iceberg," an area of the law "nettlesome to analyze," and "an infinitely complex and troublesome area" of law.[23]

¶ 35. State Farm's obligation to compensate an insured is an obligation to compensate for "damages." In

---

[21] *Sahloff v. Western Cas. & Sur. Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969).

[22] For cases adopting this interpretation, see cases cited in *Preston*, 26 S.W.3d at 148 n.10; *Popa*, 723 A.2d at 6; *Vega*, 918 P.2d at 103 n.14.

[23] *Dowhower ex rel. Rosenberg v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 22, 236 Wis. 2d 113, 613 N.W.2d 557 (quoting *French v. New Jersey Sch. Bd. Ass'n Ins. Group*, 694 A.2d 1008, 1009 (N.J. 1997)).

a case involving a different type of insurance policy, the court concluded that the word "damages" means the compensation that an insured may recover in the courts through the unlawful act of omission or negligence of another.[24] Thus, the phrase "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" in the State Farm policy might be interpreted to mean only those damages that an insured may recover in the courts.

¶ 36. This analysis does not, however, fully answer the question presented. As this court has explained, an insurance company does not, for all purposes, stand in the shoes of the tortfeasor in a lawsuit between an insurance company and the insured. The insurance company cannot take advantage of all the defenses available to an underinsured motorist. We clearly stated this rule in *Sahloff v. Western Cas. & Sur. Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969), an uninsured motorist case.

¶ 37. In *Sahloff,* the insured filed a claim against the insurance company for uninsured motorist coverage well after the three-year statute of limitations on tort actions had expired but just before the statute of limitations on the contract action was to expire. Because the three-year tort statute of limitations had already expired, the insurance company contended that the insured was no longer "legally entitled to recover" from the uninsured motorist and therefore was unable to recover from it.[25] The insurance company argued in

[24] *Shorewood Sch. Dist. v. Wausau Ins.*, 170 Wis. 2d 347, 368, 488 N.W.2d 82 (1992) (citing *Black's Law Dictionary* 389 (6th ed.)).

[25] *Sahloff,* 45 Wis. 2d at 64.

*Sahloff* that the phrase "legally entitled to recover" in the uninsured motorist coverage required an insured to be able to reduce the claim against the uninsured motorist to a judgment.

¶ 38. But the *Sahloff* court rejected the insurance company's argument and concluded that a tort statute of limitations should not bar an insured from suing an insurance company for the uninsured motorist coverage. According to *Sahloff*, to prevail in a contract suit against an insurance company, an insured does not need an enforceable tort claim against the tortfeasor under the tort statute of limitations.

¶ 39. *Sahloff* addressed the question whether an affirmative defense of the statute of limitations that is available to a tortfeasor is also available to the insurance company. It did not address the elements of the tort cause of action, although the court stated that "legally entitled to recover" deals with the question of "whether the negligence of the uninsured motorist and the contributory negligence is such as to allow the insured to recover."[26] *Sahloff* concluded that the insured's cause of action against the tortfeasor must exist *at the time of the accident* and need not also be enforceable against the tortfeasor at the time the insured sues the insurance company. Thus, *Sahloff* has limited application to the present case.

¶ 40. The interpretation of the phrase "legally entitled to collect" arises in a variety of issues, including statutes of limitations; a tortfeasor's immunity from liability, such as governmental immunity; comparative negligence;[27] and a statutory limitation on the amount of damages. We conclude that each issue as presented

---

[26] *Id.* at 69.

[27] *Id.* at 69.

by a particular case must be analyzed separately to determine whether the insurance company should be treated the same as or different than an underinsured motorist. Different considerations may apply to each issue.[28]

¶ 41. We now turn to discuss how the question of damages should be treated under the policy in the present case.

¶ 42. Arguments have been made to support the position that "legally entitled to collect" from an underinsured motorist embraces the limitations imposed by law on the amount or type of damages recoverable from the driver of the underinsured motor vehicle. Arguments have also been made to support the position that "legally entitled to collect" from an underinsured motorist means that an insurance company should compensate an insured for all damages incurred up to the policy limits. The arguments supporting the former position are more persuasive.

¶ 43. First, the policy contains no language that limits the phrase "legally entitled to collect" to a showing only of fault and damages. Proof of fault and damages alone does not necessarily entitle an injured party to collect damages under tort law. Allowing an insured to collect damages from an insurance company that an insured is not entitled to collect under tort law from an underinsured motorist seems to contravene the words of the insurance policy. If an insurance company's liability was for damages for which an underinsured

---

[28] In relying on *Sahloff,* the court of appeals applied the *Sahloff* case without considering whether the amount of damages recoverable should be treated differently from the affirmative defense of the tort statute of limitations.

motorist was not liable under the law, the policy would simply read "damages for bodily injury an insured has incurred."

¶ 44. Second, limiting State Farm's liability to the amount of damages for which an underinsured motorist is liable to the insured seems to comport with the purpose of underinsured motorist coverage. We have stated that the purpose of underinsured motorist coverage is "solely to put the insured in the same position [the insured] would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured."[29] Under this view of underinsured motorist coverage, the limits on the type or amount of damages recoverable from an underinsured motorist should apply to recovery from an insurance company.

¶ 45. Wisconsin courts have, however, also stated the purpose of underinsured motorist coverage in a different way. We have stated that the purpose of underinsured motorist coverage is "to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries."[30] Justice

---

[29] *See Dowhower ex rel. Rosenberg v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 18, 236 Wis. 2d 113, 613 N.W.2d 557 (citing 3 Irvin E. Schermer, *Automobile Liability Insurance* § 57.01, p. 57–2 (3d ed. 1995)).

[30] *See Wood v. American Family Mut. Ins.*, 148 Wis. 2d 639, 654, 436 N.W.2d 594 (1989), *overruled on other grounds, Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995). *See also Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶¶ 32–33, 245 Wis. 2d 134, 628 N.W.2d 916 (the purpose of underinsured motorist insurance is to compensate the victim of an underinsured motorist's negligence when the third party's liability limits are not adequate to compensate fully the dam-

ages of the victim) (Bradley, J., dissenting); *Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 204, 532 N.W.2d 729 (1995) (underlying purpose of underinsured motorist coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to compensate fully the victim for his or her injuries); *Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 671, 436 N.W.2d 321 (1989) (underlying purpose of underinsured motorist coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries); *Ginder v. General Cas. Co. of Wisconsin*, 2000 WI App 197, ¶ 4, 238 Wis. 2d 506, 617 N.W.2d 857 (underinsured motorist coverage protects an insured when a tortfeasor has liability coverage inadequate in amount for the injuries caused); *Meyer v. Michigan Mut. Ins. Co.*, 2000 WI App 37, ¶ 17, 233 Wis. 2d 221, 607 N.W.2d 333 (underinsured motorist coverage compensates its purchaser if a third party's policy's liability limits do not adequately compensate for his or her injuries); *Sweeney v. General Cas. Co. of Wisconsin*, 220 Wis. 2d 183, 199, 582 N.W.2d 735 (Ct. App. 1998) (underinsured motorist coverage compensates a victim when a tortfeasor's liability limits are not adequate to fully compensate the victim for his or her injuries) (Deininger, J., concurring); *Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 649, 579 N.W.2d 65 (Ct. App. 1998) (underinsured motorist coverage compensates the victim of an underinsured motorist's negligence when the third party's liability limits are not adequate to fully compensate the victim for his or her injuries); *Hull v. Heritage Mutual Ins. Co.*, 203 Wis. 2d 547, 552, 553 N.W.2d 295 (Ct. App. 1996) (*citing Vogt v. Schroeder*, 129 Wis. 2d 3, 8 n.2, 383 N.W.2d 876 (1986) (underinsured motorist coverage protects against the inadequately insured motorist)); *Krech v. Hanson*, 164 Wis. 2d 170, 175 n.2, 473 N.W.2d 600 (Ct. App. 1991) (underinsured motorist coverage compensates the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries).

believe that an underinsured motorist endorsement provides coverage when an at-fault driver's liability insurance cannot fully compensate for the insured's damages."[31] Stating the purpose of underinsured motorist coverage in this way emphasizes that an insured is seeking protection for all damages incurred up to the policy liability limits, regardless of whether the insured is legally entitled to collect the full amount of the damages from the underinsured motorist.

¶ 46. In the present case, Gillette and Ostlund are not complaining about the adequacy of the liability coverage of the underinsured motorist. On the contrary, their complaint is with the law limiting the amount of damages recoverable from the underinsured motorist.

¶ 47. In fact, underinsured motorist coverage has both purposes described in our cases: to put an insurance company in the shoes of an underinsured motorist and to compensate an insured fully for damages incurred up to the policy liability limits. But a policy need not necessarily provide coverage to fulfill both these purposes. For example, insureds might want to buy a policy authorizing compensation for all damages incurred, but State Farm need not sell this kind of policy. We do not think the policy in the present case can reasonably be read to provide coverage for all damages incurred.

¶ 48. After giving consideration to all these factors, we conclude that a reasonable person in the position of the insured would not understand "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" to mean that an insurance company will compensate an insured for damages for bodily injury that

---

[31] *Taylor,* 2000 WI 93, ¶ 29.

the insured actually incurs up to the liability limits of the insured's policy even though the underinsured motorist is not liable for the full amount of the damages under the applicable law. We also conclude that the only reasonable interpretation is that "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" means in the present case that an insurance company will compensate an insured for damages for bodily injury that the insured actually incurs up to the amount of damages for which a driver of an underinsured motor vehicle is liable under the applicable law up to the policy's liability limits.

## V

■

¶ 49. We have determined that Wisconsin law applies to interpret the insurance policy in the present case. We next determine whether under Wisconsin law the insured is entitled to recover noneconomic damages for pain and suffering for bodily injury arising from an automobile accident that occurred in Manitoba, Canada, between the insured and a Manitoba driver, when Manitoba law precludes the recovery of noneconomic damages. To answer this question, we must apply all of Wisconsin law, including Wisconsin tort choice of law rules. The choice of law is outcome determinative in the present case.

¶ 50. Wisconsin has abandoned the tort choice of law rule that the jurisdiction where an accident occurred governs an action against a tortfeasor. Although a weak presumption favoring the forum law remains, we have adopted a more flexible methodology based on

a qualitative analysis of the contacts that one or more jurisdictions have with the facts.[32]

¶ 51. The first rule in Wisconsin choice of law rules is "that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance."[33]

¶ 52. In the present case, both Wisconsin and Manitoba contacts are notable. Gillette and Ostlund are Wisconsin residents driving a car registered in Wisconsin and insured by an insurance policy issued in Wisconsin and governed by Wisconsin law. But the accident in the present case occurred in Manitoba. The driver was a Manitoba resident driving a car registered in Manitoba and insured under Manitoba law. Although each jurisdiction has numerous and significant contacts with the tort, Manitoba contacts are not of greater significance, however, than the Wisconsin contacts. It is not clear that the nonforum contacts are of greater significance.

¶ 53. The court has set forth the following five factors that influence the choice of law, and we shall consider each in turn:

(1) Predictability of results;

(2) Maintenance of interstate and international order;

(3) Simplification of the judicial task;

---

[32] *Conklin v. Horner,* 38 Wis. 2d 468, 473, 157 N.W.2d 579 (1968). *See also Hunker v. Royal Indem. Co.,* 57 Wis. 2d 588, 599, 204 N.W.2d 897 (1973) (select among rules with tangible existence in states substantially connected with the facts).

[33] *Hunker,* 57 Wis. 2d at 599 (quoting *Wilcox v. Wilcox,* 26 Wis. 2d 617, 634, 133 N.W.2d 408 (1965)).

(4) Advancement of the forum's governmental interests; and

(5) Application of the better rule of law.[34]

¶ 54. The first factor, predictability of results, deals with the parties' expectations.[35] The question here is what legal consequence of the Manitoba accident comports with the predictions or expectations of the parties? The present case involves a dispute between Wisconsin residents and a Wisconsin insurance company about a policy issued in Wisconsin. It is reasonable to assume that the parties involved in the insurance transaction expected that Wisconsin law would be applicable to claims under the policy.[36] Applying Wisconsin law to the type of damages recoverable in the present case promotes uniformity of interpretation of an insurance policy regardless of the jurisdiction in which the injury occurs. The parties will know at the time a policy is issued what benefits are available. The laws of other jurisdictions relating to limitations on damages would not define the rights of an insured who purchased an underinsured motorist policy in this state. The first factor points to applying Wisconsin law.

¶ 55. The second factor, maintenance of interstate and international order, requires that the jurisdiction that is minimally concerned defer to the jurisdiction

---

[34] *Hunker,* 57 Wis. 2d at 599.

[35] *Id.* at 600.

[36] "It is reasonable to assume [in an automobile collision occurring in Wisconsin] that the [Ohio] parties involved in the insurance transaction [in Ohio] expected that Ohio law would be applicable to automobile accident claims that arose under the policy." *Hunker,* 57 Wis. 2d at 600.

that is substantially concerned.[37] Under the facts of this case, Manitoba is minimally concerned and Wisconsin is substantially concerned.

¶ 56. Gillette and Ostlund were merely passing through Manitoba, and the location of the accident was happenstance. The Manitoba driver is not involved in the dispute about the insurance policy that is presently before this court.

¶ 57. Manitoba public policy is not involved in the present dispute. The public policy of Manitoba has been protected by determining the Manitoba driver's liability to the insured for damages according to Manitoba law. Whether State Farm compensates Gillette and Ostlund for their noneconomic damages will not change driving behavior on Manitoba's highways, a prime interest of Manitoba. Moreover, the application of Manitoba law in the present case has no effect on the administrative and judicial costs of auto accident litigation in Manitoba. Manitoba has no interest in applying its law to bar Gillette's and Ostlund's action against State Farm to recover additional compensation. Manitoba generally is not concerned with how nonresidents of Manitoba are compensated by their own insurance policies that were issued in the United States.

¶ 58. On the other hand, Wisconsin is substantially concerned. Wisconsin has the most significant relationship to the parties, who are Wisconsin residents; the insurance policy, which was written in Wisconsin; and the issue presented in this case, compensation for Wisconsin residents. We see no burden on

---

[37] *Id.* at 601.

international movement as the result of the choice of Wisconsin law.[38] The second factor points to Wisconsin law.[39]

¶ 59. The third factor is simplification of the judicial task, a principle in choice of law that states a "simple and easily applied rule of substantive or procedural law is to be preferred."[40] A Wisconsin court can easily and simply apply Manitoba law to determine damages in the present case. Manitoba law does not complicate the task of Wisconsin judges. Manitoba law simply bars further proceedings on noneconomic damages.

¶ 60. Wisconsin courts can also easily apply Wisconsin law to determine damages. We recognize, however, that if Wisconsin tort law were applied to determine anew the amount of damages that the insured is legally entitled to collect from the Manitoba driver for purposes of collecting from the insurance company, after damages have already been established under Manitoba law, litigation would increase. If we apply Wisconsin law in the present case, the liability of an underinsured motorist would be determined under one system of law and an insurance company's liability

---

[38] *Conklin v. Horner,* 38 Wis. 2d 468, 481, 157 N.W.2d 579 (1968).

[39] *See, e.g., Schlussler v. American Family Mut. Ins. Co.,* 157 Wis. 2d 516, 526–27, 460 N.W.2d 756 (Ct. App. 1990) (applying Wisconsin law of bad faith where insured was Wisconsin resident; policy was issued in Wisconsin; and collision occurred in Minnesota).

[40] *Heath v. Zellmer,* 35 Wis. 2d 578, 597, 151 N.W.2d 664 (1967).

would be determined under another system of law.[41] The factor of simplicity points to applying either Manitoba or Wisconsin law. Because "simplicity may well be outweighed by other considerations,"[42] we will examine other considerations.

¶ 61. The fourth factor is advancement of the forum's governmental interests. Wisconsin has a strong interest in compensating its residents who are victims of torts.

¶ 62. "The question in private litigation, such as in an automobile-accident case, is whether the proposed nonforum rule comports with the standards of fairness and justice that are embodied in the policies of the forum law. If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not in itself a determining, factor in the ultimate choice of law."[43]

¶ 63. Gillette and Ostlund argue that a "justice-seeking jurisdiction"[44] like Wisconsin should allow them to be compensated for damages for pain and suffering. Although Manitoba law allows recovery for medical expenses and loss of earnings, it does not provide for an element of damages well recognized in Wisconsin law. A difference in the amount or type of damages an insured can recover in Wisconsin and in Manitoba when the negligence and injury occurred in Manitoba does not necessarily violate fairness, justice, or Wisconsin public policy. In fact, the Wisconsin legislature has itself

---

[41] *Zenker v. Allstate Ins. Co.*, No. 93–2614, 1993 WL 300132, at *6 n.3 (E.D. Pa. July 30, 1993).

[42] *Heath*, 35 Wis. 2d at 597.

[43] *Id.* at 598.

[44] *Hunker*, 57 Wis. 2d at 605.

limited damages for pain and suffering in some cases. But the Wisconsin legislature has not totally barred such damages.[45] Thus, the Manitoba statute barring damages for all pain and suffering adopts a concept foreign to Wisconsin law.

¶ 64. We are mindful that Wisconsin negligence law has not only a compensatory aspect, but also an admonitory and deterrent aspect. Applying Wisconsin law of damages in the present case would not deter unsafe driving on Wisconsin or Manitoba highways. Although the deterrent purpose of tort law[46] is not furthered by applying the Wisconsin law of damages to the present case, the compensatory purpose of tort law is furthered by applying the Wisconsin law of damages.

¶ 65. Considering all these issues, we cannot conclude that Manitoba law is bad law, serves no legitimate purpose, and must be circumvented. We can and do, however, conclude that limiting Gillette's and Ostlund's recovery to less than the damages recoverable under Wisconsin tort law undermines Wisconsin's significant interests in fully compensating victims of ordinary negligence.[47] The fourth factor points to applying Wisconsin law.

¶ 66. The fifth and final factor is the application of the better rule of law. We cannot say that Manitoba law is anachronistic or fails to reflect modern trends, as we have said in other cases discussing a better rule of

---

[45] *See, e.g.,* Wis. Stat. § 893.55(4) (1999–2000) (limiting total noneconomic damages for medical malpractice claims).

[46] *Hunker,* 57 Wis. 2d at 603–04; *Conklin,* 38 Wis. 2d at 482.

[47] *See, e.g., Hunker,* 57 Wis. 2d at 603 (apply Wisconsin law in choice of law tort case if necessary to further Wisconsin's governmental interest); *Conklin,* 38 Wis. 2d at 481–83 (importance of compensatory and deterrent aspects of tort law).

law.[48] While it is arguable that the Manitoba law barring noneconomic damages may not be a Wisconsin "justice-serving rule,"[49] the Manitoba law is founded on a rational basis and serves a discernible purpose.

¶ 67. Considering the primary choice of law rule "that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance,"[50] considering the present case's significant contacts to Wisconsin (as compared to Manitoba), and considering the five choice-influencing considerations, we conclude that Wisconsin tort law applies in the present case.[51]

¶ 68. Our conclusion that Wisconsin tort law applies to determine the type and amount of damages the insured may collect from the insurance company is supported by cases in other jurisdictions.

¶ 69. Gillette and Ostlund rely on four cases that support the conclusion we reach: *Travelers Indem. Co. v. Lake*, 594 A.2d 38 (Del. 1991); *O'Connor v. O'Connor*, 519 A.2d 13 (Conn. 1986); *Thomas v. Hanmer*, 109 A.D.2d 80 (N.Y. 1985); and *Miller v. White*, 702 A.2d 392 (Vt. 1997).

¶ 70. First, these cases support our interpretation of the policy that the phrase "damages for bodily injury an insured is legally entitled to collect from the owner

---

[48] *See, e.g., Hunker,* 57 Wis. 2d at 606–07.

[49] *Id.* at 605.

[50] *Id.* at 599 (quoting *Wilcox v. Wilcox,* 26 Wis. 2d 617, 634, 133 N.W.2d 408 (1965)).

[51] The *Sahloff* court expressly refrained from deciding which jurisdiction's law determines the effect of contributory negligence on the recovery of the insured against an insurance company under uninsured motorist coverage. *Sahloff v. Western Cas. & Sur. Co.,* 45 Wis. 2d 60, 69, 171 N.W.2d 914 (1969).

or driver of an underinsured motor vehicle" requires us to apply Wisconsin tort choice of law rules to determine whether damages claimed by an insured from an insurance company are available in a tort cause of action against an underinsured motorist.

¶ 71. Second, the courts in these cases applied the tort law of the forum although the facts of these cases are not precisely the same as those in the present case. The factual differences between these cases and the present case are not, in our opinion, sufficiently different to justify a different result in the present case.

¶ 72. For example, in *Travelers*, the insured was injured in a motor vehicle accident in Quebec, Canada, when an unidentified truck caused the insured's vehicle to crash into a highway barrier. The insured would have recovered less than $30,000 if the court applied Quebec tort law, whereas he could recover up to $300,000 under Delaware tort law.[52] The insured sued Travelers in Delaware to obtain the uninsured motorist benefits of his policy. The insurance company and the insured made arguments similar to those made in the present case.

¶ 73. The Delaware court used the most significant relationship contract choice of law rules to interpret the policy and the most significant relationship rules to determine the damages the insured was "legally entitled to recover" from the driver.

¶ 74. The Delaware court concluded that Delaware had the most significant relationship to the event because the insured was a resident of Delaware, the insurance company conducted substantial business in Delaware, no compelling issue of Quebec public policy

---

[52] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 40 (Del. 1991).

was involved, and the only contact with Quebec was that the accident happened there between the insured and an unknown motorist. We agree with the Delaware court's observation that "the significant relationship test does not require a court to disregard a foreign jurisdiction's law in all torts cases. The flexibility of this doctrine requires that each case be decided on its own facts."[53]

¶ 75. Although the insured in *Travelers* and the insured in the present case were injured in a motor vehicle accident while traveling in a Canadian province, the present case, unlike *Travelers,* involves an identified Manitoba motorist in Manitoba. Consequently, it is reasonable that, when in *Travelers* the only known tie to Quebec was that the accident occurred in Quebec, the *Travelers* court concluded that Delaware tort law governed the damages the insured was legally entitled to collect. In the present case, the identity of the Manitoba driver is a tie to Manitoba but does not, we conclude, justify a different choice of law.

¶ 76. *O'Connor v. O'Connor,* 519 A.2d 13 (Conn. 1986), *Miller v. White,* 702 A.2d 392 (Vt. 1997), and *Thomas v. Hanmer,* 109 A.2d 80 (N.Y. 1985), support our conclusion that Wisconsin tort law should govern the damages to be recovered. Each of these cases involved an accident in Quebec, Canada, and a lawsuit in a state court.

¶ 77. In the first two cases, the passengers sued the driver of the car in which they were traveling. In each case the injured passengers and the drivers were residents of the forum state, the vehicle was registered

---

[53] *Id.* at 48.

in that state, and the insurance policy was issued in that state. The lawsuits were filed in the passengers' respective home states.

¶ 78. In the third case, two cars collided in Quebec. Both cars were in Canada for a short time only. The lawsuit was brought in New York where both the plaintiffs and defendants were domiciled and where both cars were registered and insured.

¶ 79. In each of these three cases the court applied the law of the forum state as its choice of tort law to allow the injured party to recover for pain and suffering from the insurance company. The law of Quebec, where the accident occurred, did not allow such recovery. Each court decided that under the facts of the case, the forum state had a superior interest in applying its tort law rather than applying the law of Quebec. The forum state's superior interest was in granting full, fair, and adequate compensation to a resident of the forum, and Quebec's interest in maintaining low insurance premiums and reducing litigation was not impaired by the application of the forum's law. We agree with this reasoning and apply the same legal principles in the present case.

¶ 80. Cases from other jurisdictions have, however, applied the tort law of the place of the accident to determine the amount and type of damages recoverable. For example, in *State Farm Mut. Auto. Ins. Co. v. Krewson,* 764 F. Supp. 1012, 1013 (E.D. Pa. 1991), a Pennsylvania resident was killed in the Cayman Islands in an automobile accident with an underinsured motorist. Under Pennsylvania law, the loss of future earnings was recoverable; under Cayman Islands law, it was not recoverable. The decedent's estate argued that the Pennsylvania measure of damages controlled because

Pennsylvania had a more significant interest in the insurance dispute than did the Cayman Islands.

¶ 81. Looking at the purpose of underinsured motorist coverage, the Pennsylvania court held that the underinsured motorist coverage obligating the insurance company to pay for damages that an insured is "legally entitled to collect from the owner or driver of an . . . underinsured motor vehicle" did not obligate the insurance company to compensate for damages for loss of future earnings because the law of the Cayman Islands where the accident occurred did not permit recovery of such damages.[54]

---

[54] For cases following this reasoning, *see, e.g., State Farm Mut. Auto. Ins. Co. v. Crockett,* 103 Cal. App. 3d 652, 652–53 (Cal. Ct. App. 1980) (California resident injured in Hawaii where no-fault law allowed less recovery than California law; the insured resided in and the uninsured coverage policy was issued in California; insured could not recover under policy because could not recover damages under Hawaii law); *Crossley v. Pacific Employers Ins. Co.,* 251 N.W.2d 383, 384–85 (Neb. 1977) (insured resident of Nebraska, with uninsured motorist coverage, could not recover under uninsured motorist coverage because the tortfeasor was not legally responsible to pay damages under Colorado law after being injured in Colorado and Colorado no-fault law allowed less recovery than Nebraska); *Hertz Claim Mgmt. v. Marchetta,* 656 A.2d 1298, 1300 (N.J. Super. Ct. 1995) (New Jersey resident "legally entitled to recover from the owner or operator of an . . . underinsured motor vehicle" requires application of Virginia substantive law after killed in a one-car automobile accident in Virginia; driver was a Virginia resident; car was registered in New Jersey and underinsured motorist coverage was issued in New Jersey; Virginia wrongful death statute permits more compensation than the New Jersey law); *Kurent v. Farmers Ins. of Columbus, Inc.,* 581 N.E.2d 533, 534 (Ohio 1991) (insured's recovery of noneconomic damages under uninsured motor vehicle coverage denied as not "legally entitled to collect" because Michigan

¶ 82. *Williams v. State Farm Mut. Auto. Ins. Co.,* 641 A.2d 783 (Conn. 1994), also supports State Farm's position. In *Williams,* a resident of Connecticut, with an underinsured motorist policy issued in Connecticut, was injured in a motor vehicle accident in New York. The driver of the other car had a California driver's license, although the vehicle was registered in New York. The driver of the other car carried $10,000 in liability coverage. The $10,000 was exhausted by payments to the injured insured, after which the insured sought $15,000 compensation from his insurance company under his underinsured motorist coverage for the remainder of his damages. Under New York's no-fault automobile insurance law, the insured was not entitled to collect additional damages for bodily injury from the driver. Connecticut tort law, however, would have allowed the insured to recover additional damages from the driver.

¶ 83. The insured sued the insurance company in Connecticut. The dispute centered on whether Connecticut or New York law should govern recovery of damages.

¶ 84. The Connecticut Supreme Court applied Connecticut law to interpret the underinsured motorist. It held that the phrase "legally entitled to collect from the owner or driver" under Connecticut law required the insured to prove that the driver would have been liable for the damages under New York law where the accident occurred. According to *Williams,* the mere existence of the right to pursue a claim for underinsured motorist coverage under an insurance policy does

precluded recovery for noneconomic damages unless those damages reached a minimum threshold level when insureds were residents of Ohio, policy was issued in Ohio, accident occurred in Michigan, and driver causing the injury was a Michigan resident who was insured pursuant to Michigan's no-fault insurance laws).

not in and of itself entitle an insured to recover those benefits.[55] Any liability that would have attached to the underinsured motorist would have attached under New York law.[56]

¶ 85. Thus, *Williams* concluded that the applicable New York tort law, which proscribed recovery for the damages claimed, precluded the Connecticut insured from recovering underinsured motorist benefits from the Connecticut insurance company.

¶ 86. These cases are in substantial agreement with the analysis we have used. They support our interpretation of the phrase "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" as requiring under the contract law of the state in which the policy was issued an underinsured motorist to be liable for the amount of damages allowed under the tort law applicable under the forum's choice of law rules. In these cases, however, in balancing the factors to determine the choice of law the forum applied the tort law of the place of the accident.

¶ 87. We caution that neither the law of the forum nor the law of the place of the accident is the tort choice of law rule applicable to every fact situation or to every issue that might arise regarding the policy language "legally entitled to collect" from an underinsured motorist. A law of one jurisdiction could be invoked with respect to some issues and in some fact situations and the law of another jurisdiction invoked in respect to

[55] *Williams v. State Farm Mut. Auto. Ins. Co.,* 641 A.2d 783, 787 (Conn. 1994).

[56] *Id.* at 788.

other issues and other fact situations.[57] This court has long recognized that "it is not necessary in each case to apply only the law of a single state to all phases of [a] lawsuit."[58]

## VI

¶ 88. We next consider whether this action is precluded by the State Farm policy exhaustion provision that precludes the payment of underinsured motorist benefits until the limits of liability of all bodily injury policies that apply have been used up by payment of judgments or settlements.

¶ 89. The State Farm policy states, in relevant part, "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS."

¶ 90. It is undisputed that the Manitoba driver's liability policy has not been exhausted—that is, "used up." Gillette has received no payments from the Manitoba driver's liability policy whatsoever. Ostlund has received payments amounting only to a fraction of the coverage available to him under the Manitoba driver's liability policy. In addition, there is no evidence of a settlement or judgment having been entered to exhaust the limits of the Manitoba driver's insurance coverage.

---

[57] *Hunker v. Royal Indem. Co.,* 57 Wis. 2d 588, 603 n.1, 204 N.W.2d 897 (1973). *See also Restatement (Second) of Conflict of Laws* § 145, 414 (1971) (choice of law is evaluated with respect to the particular issue).

[58] *Wilcox v. Wilcox,* 26 Wis. 2d 617, 631, 133 N.W.2d 408 (1965).

¶ 91. State Farm argues that absent a settlement payment or a judgment payment, there can be no exhaustion of the Manitoba driver's liability insurance. To support its position, State Farm relies on *Danbeck v. American Fam. Mut. Ins. Co.,* 2001 WI 91, 245 Wis. 2d 186, 629 N.W.2d 150, which addressed whether an underinsured motorist carrier was obligated to pay underinsured motorist benefits to an insured after the insured settled with an underinsured motorist's liability insurer for less than that insurer's full policy limits. *Danbeck* required exhausting the full limits of the underinsured motorist's liability policy before the underinsured motorist carrier was obligated to pay underinsured motorist benefits to the insured. *Danbeck* concluded that the policy language precluded exhaustion by way of "settlement plus credit."

¶ 92. We conclude that *Danbeck* does not support State Farm's position in the present case. Neither Gillette nor Ostlund has settled the liability portion of their claims for less than the amount of the underinsured motorist's policy limits. The present case raises the question of the effect of the exhaustion requirement in State Farm's underinsured motorist policy on recovery of noneconomic damages in Wisconsin from State Farm when Manitoba law governing the tortfeasor's liability allows no recovery for noneconomic damages.

¶ 93. Nevertheless, applying *Danbeck*'s analysis, we conclude that the Manitoba driver's limits of liability, that is, the total amount of liability coverage available for noneconomic damages, are zero. The term "exhaust" as used in the policy means consume completely. The total amount of liability coverage available to the Manitoba driver under his policy for noneconomic damages has been totally consumed. The trigger under the State Farm policy is "by payment of judge-

ments or settlements." This phrase has no application to this case; both parties agree that any judgment or settlement would award zero dollars for noneconomic damages.

¶ 94. Here, Gillette and Ostlund are not entitled to noneconomic damages from the underinsured motorist. Gillette and Ostlund are not entitled to collect any further damages for noneconomic damages from the underinsured motorist under applicable Manitoba law. The court of appeals held, without citation to any precedent for its conclusion, that the exhaustion requirement found in the State Farm underinsured motorist policy was not applicable in the present case because the exhaustion requirement was unrelated to Manitoba's law that bars the recovery of noneconomic damages arising from automobile accidents.[59]

¶ 95. We agree with the court of appeals. We conclude that the State Farm policy exhaustion requirement is satisfied, because the amount of recovery for noneconomic damages from the Manitoba underinsured motorist is zero. Therefore, in the present case, the limits of liability of all bodily injury policies that apply for noneconomic damages have been "used up."

---

[59] *See State Farm Mut. Auto Ins. Co. v. Gillette,* 2001 WI App 123, ¶¶ 32–33, 246 Wis. 2d 561, 630 N.W.2d 527.

The court of appeals cited its *Danbeck* decision, *Danbeck v. American Fam. Mut. Ins. Co.,* 2000 WI App 26, ¶ 10, 232 Wis. 2d 417, 605 N.W.2d 925 (Ct. App. 1999), solely for the proposition that the insurance policy exhaustion provision was not ambiguous. This court similarly held in its review of *Danbeck* that the provision requiring exhaustion "by payment of judgments or settlements" was not ambiguous. *See Danbeck v. American Family Mut. Ins. Co.,* 2001 WI 91, ¶ 13, 245 Wis. 2d 186, 629 N.W.2d 150.

## VII

¶ 96. In summation, we interpret the phrase "legally entitled to collect from the owner or driver of an underinsured motor vehicle" under Wisconsin contract choice of law.

¶ 97. The interpretation of the phrase "legally entitled to collect" from a driver of an underinsured motor vehicle arises in a variety of issues, including statutes of limitations; a tortfeasor's immunity from liability, such as governmental immunity; comparative negligence; and a limitation on the amount or type of damages. Each issue must be analyzed separately to determine whether an insurance company should be treated the same as or different than an underinsured motorist. Different considerations may apply to each issue.

¶ 98. We conclude that the only reasonable interpretation of the policy for purposes of calculating damages in the present case is that "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle" means that an insurance company will compensate an insured for damages for bodily injury that the insured actually incurs for which an underinsured motorist is liable to the insured under the applicable law up to the policy's liability limits.

¶ 99. We further conclude that Wisconsin tort choice of law rules govern which jurisdiction's law determines the damages an insured is legally entitled to collect from an underinsured motorist. Applying Wisconsin choice of law rules in the present case instructs us to look to Wisconsin law, the law of the forum. Wisconsin has the most significant contacts to the present case. Wisconsin is the jurisdiction where the

injured persons reside and where the insurance policy was issued by a Wisconsin insurance company to Wisconsin insureds. Applying Wisconsin law comports with Wisconsin's public policy of compensating victims of tortfeasors. Under Wisconsin law, Gillette and Ostlund are legally entitled to collect noneconomic damages that arise from an automobile accident, and consequently, Gillette and Ostlund are legally entitled to collect noneconomic damages from State Farm on the basis of the underinsured motorist coverage.

¶ 100. We repeat our caution, however, that neither the law of the forum nor the law of the place of the accident is the choice of law rule applicable to every fact situation or to every issue that might arise regarding the "legally entitled to collect" language. The law of one jurisdiction could be invoked with respect to some issues and in some fact situations and the law of another jurisdiction invoked in respect to other issues and other fact situations.[60]

¶ 101. We further conclude that the State Farm policy exhaustion requirement is satisfied, because the amount of recovery for noneconomic damages from the Manitoba underinsured motorist is zero. Therefore in the present case the limits of liability of all bodily injury policies that apply for noneconomic damages have been used up.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 102. JON P. WILCOX, J. *(concurring in part, dissenting in part).* I concur with the majority's reason-

---

[60] *Hunker v. Royal Indem. Co.,* 57 Wis. 2d 588, 603 n.1, 204 N.W.2d 897 (1973). *See also Restatement (Second) of Conflict of Laws* § 145, 414 (1971) (choice of law is evaluated with respect to the particular issue).

ing and conclusions in Parts I-IV. However, I do not agree with the majority's choice of law analysis in Part V, nor do I agree with the ultimate decision of the court to affirm the court of appeals. I would find that under Wisconsin choice of law rules, Manitoba law should apply to determine the amount that Gillette and Ostlund would be legally entitled to collect. I therefore dissent from the opinion of the court.

¶ 103. The majority correctly states that Wisconsin has abandoned the lex loci delicti rule in favor of a more flexible rule, which takes into account the policies and interests of the jurisdictions involved in order to determine the jurisdiction with the most significant relationship to the lawsuit and the parties. *Wilcox v. Wilcox,* 26 Wis. 2d 617, 621, 631, 133 N.W.2d 408 (1965). I also agree there are significant contacts that would support the application of either Wisconsin or Manitoba law. *See* majority op. at ¶ 52. However, I disagree with the majority's conclusion that the contacts, when viewed in light of the five guiding factors we adopted in *Heath v. Zellmer,* 35 Wis. 2d 578, 595–96, 151 N.W.2d 664 (1967), are insufficient to overcome the weak presumption that the forum law should apply.

¶ 104. In our choice of law analysis, we have traditionally started, as the majority notes, with the weak presumption that the law of the forum state applies. *Zelinger v. State Sand & Gravel Co.,* 38 Wis. 2d 98, 106, 156 N.W.2d 466 (1968); *Wilcox,* 26 Wis. 2d at 634; *Heath,* 35 Wis. 2d at 593. We then apply an "interest analysis" to the contacts of the interested jurisdictions, where we place less emphasis on the quantitative contacts of the parties and focus on the relevance of the contacts to the policies of the place of the wrong and the forum. *Zelinger,* 38 Wis. 2d at 105. If this analysis demonstrates that the jurisdiction where

the wrong took place is preferable to the forum jurisdiction, the law of the location of the tort will be applied.

¶ 105. In conducting this analysis, we are guided by the factors we adopted in *Heath. Heath,* 35 Wis. 2d at 596 (citing Robert Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U. L. Rev. 267, 282 (1966)). These factors are: (1) the predictability of results; (2) the maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.* These factors are considered in each case and vary according to the precise issue involved. Here, I would hold that they lead to the conclusion that Manitoba law is more appropriately applied to determine what Gillette and Ostlund were legally entitled to collect.

¶ 106. With regard to the first factor, the predictability of results, the majority concludes that it is reasonable to assume that the parties expected that Wisconsin law would apply to claims under the policy. Majority op. at ¶ 54. The majority argues that this conclusion promotes uniformity of interpretation regardless of where the injury occurs. *Id.* I do not think there is a basis for making such an assumption.

¶ 107. "Predictability" under this factor is not an element of pre-selection that controls the choice of law in an accident. Rather, the predictability must arise when all of the relevant facts are made available and analyzed. *Heath,* 35 Wis. 2d at 599. The analysis must lead to a reasonable certainty based on a rational analysis, as opposed to the certain but irrational selection of the site of the tort, *Conklin v. Horner,* 38 Wis. 2d

607

468, 479–80, 157 N.W.2d 579 (1968), or as the majority suggests in this case, the site where the contract was made.

¶ 108. A lay person driving across a state or international border probably gives little thought to which jurisdiction's damages laws would be reasonable to apply in the event of an accident, and the rule applied by the majority—that the parties would assume that Wisconsin law applies under the contract—does provide some certainty, but is no more rational than assuming that the law of the fortuitous site of the accident would apply. Although a UIM claim is an action against the contract, *Sahloff v. W. Cas. & Sur. Co.*, 45 Wis. 2d 60, 70, 171 N.W.2d 914 (1969), the choice of the underlying negligence law is not guaranteed. As we have stated previously, "a tort which is not intended can never, by definition, be the subject of advance planning with reference to a particular state's law." *Conklin,* 38 Wis. 2d at 478. Although it may be reasonable to assume that the parties expected that the law of the state where the contract was made should apply, it is equally reasonable to assume that a Wisconsin resident who drives in Manitoba, and then is involved in a collision involving a Manitoba resident who is driving a vehicle licensed and registered in Manitoba would have tort damages computed under Manitoba law. Thus, I do not think that predictability, as guided by this factor, is necessarily fostered by the application of Wisconsin law.

¶ 109. With regard to the second factor, the maintenance of interstate and international order, the majority notes that under these circumstances, Manitoba is minimally concerned and Wisconsin is substantially concerned. Majority op. at ¶ 55. The majority points out that the location was happenstance and that the imposition of noneconomic damages would not affect

608

administrative costs or driving habits in Manitoba. *Id.* at ¶¶ 56–57. In light of how we have treated this factor previously, I think this elevation of the forum state's concerns with regard to international comity comes across as somewhat parochial.

¶ 110. As pointed out by the majority, both Manitoba and Wisconsin have real interests at stake. *Id.* at ¶ 52. However, Manitoba is more than "minimally concerned," as the majority suggests, because the negligent activity in question here did occur on Manitoba's highways, and involved a Manitoba resident. *See Conklin,* 38 Wis. 2d at 479. Moreover, I fail to see how comity, the flow of commerce, or travel between Wisconsin and Manitoba (or, more generally, between the United States and Canada) would either be promoted or discouraged under the application of either law, as I doubt that any judicial decisions regarding automobile insurance would be likely to have such an effect. *See Zelinger,* 38 Wis. 2d at 109. At most, I would conclude that this factor does not favor either jurisdiction's law.

¶ 111. In its analysis of the third factor—whether the judicial task will be simplified by the application of one law or the other—the majority notes that the Wisconsin court can simply and easily apply Manitoba law as well as Wisconsin law on noneconomic damages, and that this renders this factor neutral. Majority op. at ¶¶ 59–60. I disagree.

¶ 112. It is true that the Wisconsin court could competently apply both Manitoba and Wisconsin law, since Wisconsin courts often are required to interpret the law of other states and the federal government. However, applying Wisconsin law here will, as the majority concedes, require the Wisconsin court to calculate the noneconomic damages on top of the liability damages already calculated under Manitoba law. Fur-

ther, as the majority correctly points out, if Wisconsin law is applied to the present case, the liability of an underinsured motorist would be determined under one system of law, while a straight liability suit would be determined under a different system. *Id.* (citing *Zenker v. Allstate Ins. Co.,* No. CIV. A. 93–2614, 1993 WL 300132, *6 n.3 (E.D. Pa. 1993)). Although the majority attempts to minimize this factor, both of these results would undoubtedly make the litigation more complex, significantly increase the amount of money and time spent on litigation, and ultimately increase the judicial burden. For these reasons, I would find that this factor clearly supports the application of Manitoba law.

¶ 113. The fourth factor, the advancement of the forum's governmental interests, is admittedly one of the most important. *Conklin,* 38 Wis. 2d at 481. The majority finds that this factor promotes the use of Wisconsin law, since Wisconsin has a strong interest in compensating its residents who are victims of torts, majority op. at ¶ 61, and that the Manitoba statute barring noneconomic damages is contrary to Wisconsin policy. *Id.* at ¶ 63. The majority concludes that this factor also shows a preference for Wisconsin law.

¶ 114. Although I agree that Wisconsin has a policy of compensating tort victims, I cannot conclude that the policy is necessarily better served by applying Wisconsin law. The fact that Manitoba law allows for different, albeit less, recovery is not a per se indication that the Manitoba law is less reasonable or that it goes against the public policies of Wisconsin. As the majority recognizes, the Wisconsin legislature itself has limited tort damages in some circumstances. *Id.* (citing Wis. Stat. § 893.55(4) (1999–2000)). Under Manitoba law, there is no question that Gillette and Ostlund will be compensated for their medical expenses and their lost

wages. As such, the Wisconsin policy of compensation for tort victims will not be contravened.

¶ 115. Finally, I agree with the majority's conclusion that neither Wisconsin law nor Manitoba law is necessarily a "better rule of law." Majority op. at ¶ 66. As the majority points out, denying noneconomic damages is not anachronistic, and is founded on a rational basis. I agree that, at most, this factor is inconclusive.

¶ 116. After reviewing the five factors, I would find that the choice of law analysis demonstrates that Manitoba law is properly applied in this case. In my opinion, most of the choice of law factors are neutral at best, and those that show any preference for one jurisdiction over the other—particularly the judicial economy factor—tend to favor the application of Manitoba law. Here, I think that the application of Manitoba law would provide a consistent result, would comport with the public policies of Wisconsin tort law, and most notably, would promote judicial efficiency. For that reason, I would hold that the damages which Gillette and Ostlund are legally entitled to collect for the purpose of their UIM policy should be measured by Manitoba tort law, and I would reverse the decision of the court of appeals.

¶ 117. For the foregoing reasons, I dissent.

¶ 118. N. PATRICK CROOKS, J. *(dissenting)*. I agree with some portions of the majority's opinion. I agree that Wisconsin contract law governs the interpretation of this insurance policy. I also agree that the insurance policy's UIM provision, promising to pay "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle," is reasonably interpreted to mean "that an insurance company will compensate an insured for

damages for bodily injury that the insured actually incurs up to the amount of damages for which a driver of an underinsured motor vehicle is liable under the applicable law up to the policy's liability limits." Majority op. at ¶ 48.

¶ 119. I respectfully dissent, however, because the rest of the majority opinion fails to properly interpret the State Farm policy under applicable Wisconsin law. I would reverse the decision of the court of appeals because under Wisconsin law and, thus, the plain language of the policy, Manitoba law, not Wisconsin law, determines the amount of damages Gillette and Ostlund are legally entitled to collect from the underinsured motorist. Furthermore, I would reverse the court of appeals' decision because under *Danbeck v. American Family Mutual Insurance Co.*, 2001 WI 91, 245 Wis. 2d 186, 629 N.W.2d 150, the State Farm policy exhaustion provision has not been satisfied merely because there is no recovery for non-economic damages. The majority claims that such a bar to recovery satisfies the exhaustion requirement.

¶ 120. First, by interpreting the plain language of the policy consistent with Wisconsin law, I conclude that Manitoba law must not be ignored in determining the amount of damages Gillette and Ostlund are legally entitled to collect from the underinsured motorist. It is well established in Wisconsin, and the majority agrees, that the words of an insurance policy are given their common and ordinary meaning. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150; majority op. at ¶ 28. It is also well established that an insurance contract is interpreted based on what a reasonable person in the position of the insured would understand the words to mean. *Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, ¶ 13,

248 Wis. 2d 1031, 637 N.W.2d 45; majority op. at ¶ 28. Furthermore, insurance contracts should be interpreted and applied "according to their unambiguous language." *American Family Mut. Ins. Co. v. Powell,* 169 Wis. 2d 605, 608, 486 N.W.2d 537 (Ct. App. 1992). Using these Wisconsin canons of contract interpretation, I find it appropriate to look at the language of the policy to interpret the meaning of "legally entitled to collect from the owner or driver of an underinsured motor vehicle." Unlike the majority, I conclude that the question of which jurisdiction's law determines what damages Gillette and Ostlund are "legally entitled to collect" is resolved by interpreting the policy itself, rather than resorting to choice of law considerations.

¶ 121. As the majority opinion recognizes, damages for bodily injury an insured is legally entitled to collect requires that the damages must be compensable under the law. Majority op. at ¶ 43. However, the majority opinion then ends its analysis of the policy itself and effectively ignores the rest of the phrase, "from the owner or driver of an underinsured motor vehicle." Giving this phrase its common and ordinary meaning, which is the approach that is consistent with Wisconsin law, requires the court to conclude that Manitoba law, not Wisconsin law, determines *liability for damages.*

¶ 122. Here, the owner or driver of the underinsured motor vehicle is Norman Unrau. Under the facts of this case, and Gillette and Ostlund's claim for UIM coverage, the insurance policy essentially provides "damages for bodily injury [Gillette and Ostlund are] legally entitled to collect from [Unrau]." The only question is how and where Gillette and Ostlund can *legally* recover damages for bodily injury from Unrau. This is not a choice of law issue, but rather a determi-

nation made consistent with Wisconsin law, because Gillette and Ostlund could only effectively file suit against Unrau, and consequently recover damages from Unrau, under Manitoba law. Gillette and Ostlund could not *legally* recover damages for bodily injury from Unrau under Wisconsin law, because Gillette and Ostlund could not bring Unrau into a Wisconsin court.

¶ 123. Unrau, a Manitoba resident, does not have sufficient contacts with Wisconsin in order to be hauled into a Wisconsin court. None of the bases for personal jurisdiction set forth in Wis. Stat. § 801.05 or § 801.06, as required by § 801.04(2), are present. The accident did not occur in Wisconsin, but rather in Manitoba, nor does the record reflect that Unrau has ever been to Wisconsin, or even had any contacts with Wisconsin. It is inappropriate and unnecessary, therefore, to even consider whether Gillette and Ostlund are "legally entitled to collect" damages from Unrau under Wisconsin law. *See Burns v. Geres,* 140 Wis. 2d 197, 201–202, 409 N.W.2d 428 (Ct. App. 1987) (stating that contacts in Wisconsin "are so fortuitous and circumstantial that to impose Wisconsin law would constitute officious intermeddling"). In other words, because Gillette and Ostlund, if a lawsuit is necessary, could only legally collect damages from Unrau by filing suit in Manitoba, under Manitoba law, there is no choice of law issue. The unambiguous language of the insurance policy itself, coupled with the facts and circumstances of this case, answer the question of what "legally entitled to collect" means.

¶ 124. In addition to ignoring the plain language of the policy itself, I note what appears to be the inconsistent consequence of the majority's opinion. By using Wisconsin law to determine State Farm's liability on the insurance policy, the majority opinion effectively

creates a situation where the liability of the underinsured motorist would be determined under one system of law, Manitoba law, but the insurance company's liability would be determined under another system of law, Wisconsin law. This result is inconsistent with the plain language of the insurance policy, and seems contrary to common sense principles relating to insurance contract interpretation and application.

¶ 125. Applying Manitoba law, I would conclude that because Gillette and Ostlund are not entitled to collect non-economic damages from Unrau, they, accordingly, are not entitled to collect those damages under the State Farm underinsured motorist policy provisions. I would, therefore, reverse the decision of the court of appeals.

¶ 126. I also respectfully dissent because I disagree with the majority's interpretation and application of *Danbeck*. I would reverse the court of appeals' decision, because the State Farm policy exhaustion provision has not been satisfied merely because there is no recovery for non-economic damages under Manitoba law.

¶ 127. Before discussing the merits of *Danbeck*, however, I note that the court of appeals' decision in this case, which the majority relies on, was issued before this court issued the *Danbeck* decision. *See* majority op. at ¶ 94. The court of appeals here, therefore, relied only on the court of appeals' decision in *Danbeck*, 2000 WI App 26, 232 Wis. 2d 417, 605 N.W.2d 925. Although this court ultimately affirmed the court of appeals' decision, this court's opinion further explained and clarified the law relating to the exhaustion clause, and our opinion is dispositive here.

¶ 128. The majority opinion and the court of appeals' decision in this case both fail to follow *Danbeck*,

and do not give the required meaning to the specific language in the State Farm policy. The policy states, "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN *USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.*" (Emphasis added.) This language is nearly identical to the language of the policy in *Danbeck,* because both policies require that the policy limits be exhausted/used up "by payment of judgements or settlements." 2001 WI 91, ¶ 3. In *Danbeck,* this court found that the manner of exhaustion was important, because "settlement plus credit" did not constitute "payment." *Id.* at ¶ 13. Although we recognized that "settlement plus credit" has "the same practical effect as payment of full policy limits, it is not consistent with the plain language of the policy, which unambiguously requires exhaustion '*by payment of judgements or settlements,*' not 'settlement plus credit.' " *Id.*

¶ 129. Following the same reasoning, I would uphold the plain language of the State Farm policy, and conclude that UIM coverage is not applicable here, because the liability policy limits have not been "used up by payment of judgements or settlements" for either Gillette or Ostlund. In fact, the record reflects that Unrau's insurer, MPIC, has paid Ostlund and his medical providers and subrogated health insurer a total of $26,833.51, and MPIC has not made any payments to, or for the benefit of, Gillette. Furthermore, there has been no payment of judgments or settlements here because Gillette and Ostlund will not be able to recover any amount of money for non-economic damages from Unrau, the so-called Manitoba underinsured motorist. Because there has been no payment whatsoever *for Gillette* and further payments are possible under the

Manitoba policy for Ostlund and Gillette, I find it unreasonable, under *Danbeck,* to conclude that the limits have been "used up by payment of judgements or settlements." Applying *Danbeck,* I find a further reason to reverse the court of appeals' decision.

¶ 130. For these reasons, I respectfully dissent.

¶ 131. I am authorized to state that Justice DIANE S. SYKES joins this dissent.