STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff-Respondent,†

v.

Franklin GILLETTE and V. Thomas Ostlund,
Defendants-Appellants.

Court of Appeals

*No. 00–0637. Oral argument November 30, 2000.—Decided
May 24, 2001.*

## 2001 WI App 123

(Also reported in 630 N.W.2d 527.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was orally argued by and submitted on the briefs of *Gregory J. Egan* of *Parke O'Flaherty, Ltd.,* La Crosse.

On behalf of the plaintiff-respondent, the cause was orally argued by and submitted on the brief of *Claude J. Covelli* of *Boardman, Suhr, Curry & Field, LLP,* Madison.

Before Roggensack, Deininger and Hue, JJ.[1]

¶ 1. HUE, J. The issue on appeal is whether, as a matter of law, the appellants, Gillette and Ostlund, are entitled to uninsured or underinsured motorist benefits pursuant to policies of motor vehicle insurance issued by State Farm Mutual Automobile Insurance Company (State Farm). The trial court, in granting summary judgment, held that the tortfeasor's vehicle was not uninsured under the language of the policy, and that Gillette and Ostlund had not used up the limits of liability of the tortfeasor's policy, a prerequisite for claiming the underinsured benefits of the insurance policy. The trial court also concluded that because Manitoba's "no-fault" automobile liability law precludes recovery of noneconomic damages, Ostlund and Gillette could not utilize the underinsured motor vehicle coverage in State Farm's policy to recover noneconomic damages from State Farm. The trial court thus concluded that Gillette and Ostlund are not entitled, as a matter of law, to either uninsured or underinsured motorist benefits under the State Farm policies.

¶ 2. We agree that Gillette and Ostlund are not entitled to uninsured benefits and affirm that portion

---

[1] Circuit Judge William F. Hue is sitting by special assignment pursuant to the Judicial Exchange Program.

of the trial court's ruling. However, we conclude that Gillette and Ostlund are entitled to underinsured benefits and, therefore, we reverse that portion of the trial court's ruling.

## BACKGROUND

¶ 3. The relevant facts are not in dispute. On October 11, 1995, V. Thomas Ostlund, a Wisconsin resident, was driving his mother's Chevrolet pickup truck in Manitoba, Canada. Franklin Gillette was a passenger in Ostlund's vehicle. While legally stopped, Ostlund's truck was struck by another truck driven by Norman Unrau, a resident of Manitoba. The parties agree that Unrau was responsible for the accident and that the accident caused physical injuries to both Gillette and Ostlund.

¶ 4. Unrau's vehicle was registered in Manitoba and, consistent with Manitoba's "no-fault" automobile liability legislation, insured by the Manitoba Public Insurance Corporation (MPIC). Both Gillette and Ostlund submitted claims to MPIC for bodily injuries. MPIC paid Ostlund's subrogated health insurance carrier $20,000 and paid Ostlund, himself, $6,833.51 for impairment and health care expenses. Gillette has filed a claim but has received no payment for the twenty physiotherapy sessions he attended.

¶ 5. On the date of the accident, Ostlund's mother had a State Farm insurance policy on the Chevrolet pickup driven by Ostlund. That policy included medical payments coverage with limits of $5,000 per person, and uninsured motorist provisions with limits of $25,000 per person and $50,000 per accident. There is no underinsured motorist coverage in that policy.

¶ 6. Ostlund, the driver of the Chevrolet truck, had two automobile policies in effect, also issued by

State Farm. These policies provided both uninsured and underinsured motorists coverage, with identical liability limits of $100,000 per person and $300,000 per accident. The uninsured motorist provisions of Ostlund's and his mother's insurance policies contain identical language.

¶ 7. The policy language relevant to an uninsured motor vehicle is as follows:

> Uninsured Motor Vehicle—Coverage U
>
> . . . .
>
> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.
>
> *Uninsured Motor Vehicle*—means:
>
> 1. a land motor vehicle, the ownership, maintenance or use of which is:
>
> a. not insured or bonded for bodily injury liability at the time of the accident; or
>
> b. insured or bonded for bodily injury liability at the time of the accident; but
>
> (1) the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged . . . .

¶ 8. Section III of Mr. Ostlund's policies define Underinsured Motor Vehicle—Coverage W, in material part, as follows:

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle*.

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.

*Underinsured Motor Vehicle*—means a land motor vehicle:

1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and

2. whose limits of liability for bodily injury liability:

 a. are less than the amount of the *insured's* damages; or

 b. have been reduced by payments to *persons* other than the *insured* to less than the amount of the *insured's* damages.

 . . . .

**Limits of Liability**

**Coverage W**

 . . . .

5. The most we pay will be the lesser of:

 a. the difference between the amount of the *insured's* damages for *bodily injury*, and the amount paid to the *insured* by or for any *person* or

567

organization who is or may be held legally liable for the *bodily injury*; or

b. the limits of liability of this coverage.

¶ 9. The parties agree that Gillette and Ostlund qualify as insureds under the uninsured motorists coverage of Ostlund's mother's policy and under the uninsured motorist and underinsured motorist coverages of the policies issued to Mr. Ostlund.

¶ 10. State Farm has paid Ostlund $4,400.20 and Gillette $2,408.80 in medical payment benefits under Ostlund's mother's policy.

## DISCUSSION

¶ 11. Our review of summary judgment is de novo. The same standards apply at both the trial and appellate levels. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). Summary judgment is available where, as here, no material facts are in dispute and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (1999–2000).[2] Generally, interpretation of an insurance contract is a question of law subject to de novo review. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984).

¶ 12. The words in an insurance contract are construed as a reasonable person in the position of an insured would understand them. *Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). If a word or phrase in an insurance contract is susceptible to more than one reasonable construction, it is ambigu-

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

ous. *Id.* at 135. Any ambiguity that exists is resolved against the insurer, because the insurer drafted the documents and thus was in the best position to address, with clarity, the terms applicable. *Id.* However, clear, unambiguous policy terms may not be rewritten by the courts. *Id.*

¶ 13. The parties disagree whether Unrau's vehicle was uninsured as defined in the policies at the time of the accident. Gillette and Ostlund argue that Manitoba's "no-fault" automobile liability legislation,[3] which precludes accident victims from recovering noneconomic damages (such as pain, suffering and emotional distress), renders the term "uninsured motor vehicle" in the policies ambiguous. Appellants cite *Hull v. State Farm Mutual Automobile Insurance Co.*, 222 Wis. 2d 627, 586 N.W.2d 863 (1998), where the supreme court found the term "uninsured motor vehicle" in a State Farm policy to be ambiguous and required coverage, as support for their contention that the term is similarly ambiguous on the present facts.

¶ 14. State Farm argues that because Unrau was covered by liability insurance, and because that policy provided coverage in excess of the minimum required under Wisconsin's Financial Responsibility Act,[4] his vehicle was not uninsured. We agree with State Farm's analysis.

██

¶ 15. WISCONSIN STAT. § 632.32(4)(a)1 requires every automobile liability policy issued in Wisconsin to include uninsured motorist coverage "[f]or the protection of persons injured who are legally entitled to

---

[3] *See* Manitoba Public Insurance Corporation Act, R.S.M. ch. P215, § 72 (1993) (Can.). We will refer to this statute as the "Act."

[4] *See* WIS. STAT. ch. 344, and § 632.32(4)(a).

recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident." As the supreme court explained:

> [T]he purpose of uninsured motorist coverage " 'is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured.' " . . . .

> Stated another way, the legislative purpose of § 632.32(4) is to place the insured in the same position as if the uninsured motorist had been insured.

*Hull*, 222 Wis. 2d at 644–45 ¶ 24 (citations omitted).

¶ 16. State Farm's policy defines "uninsured motor vehicle" to include a vehicle insured for liability if "the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged." Consequently, in order to resolve whether Unrau's vehicle was uninsured as that term is used in State Farm's policy, it is necessary to compare the liability limits of Unrau's policy to the limits of liability required in Wisconsin, the state where Ostlund's vehicles were garaged, under Wisconsin's Financial Responsibility Act.

¶ 17. Unrau's insurer, MPIC, provided liability coverage for Unrau's vehicle. The tort damages available under Manitoba law and covered by MPIC include: recovery by "[a] full-time earner" of an income replacement indemnity "equal to 90% of his or her net income computed on a yearly basis," subject to an annual maximum of $55,000 ($37,800 U.S.) (Act §§ 81(1), 111(1) and 114(1) and (2)); payment of up to $100,000 ($68,728 U.S.) for "permanent impairment," (Act § 127) with less than full permanent impairment compensated as a

percentage of this sum (Act § 129(1) and (2)); and payment of "medical and paramedical care, including transportation and lodging for the purpose of receiving the care" without any maximum limit of liability (Act § 136(1)).[5]

¶ 18. The limits of liability required by the Wisconsin Financial Responsibility Act are $25,000 per person and $50,000 per accident. WIS. STAT. § 344.15(1); *see also Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 542, 464 N.W.2d 830 (1991).

¶ 19. MPIC's liability coverage pays for medical expenses without any upper limit. It pays income replacement to an "annual" limit exceeding $25,000. MPIC has already paid more than $25,000 to Ostlund and his subrogee for Ostlund's bodily injury. Thus, Unrau's liability coverage with MPIC is greater than the $25,000 required by Wisconsin's Financial Responsibility Act. Unrau's vehicle is not an "uninsured motor vehicle" under WIS. STAT. § 632.32(4)(a) or under the plain, unambiguous language of State Farm's policies.

¶ 20. Although the supreme court in *Hull* held that the term "uninsured motor vehicle" in a State Farm policy was ambiguous, there are factual and contextual differences between this case and *Hull*. In *Hull*, the owner and driver of an "at-fault" vehicle were different individuals. One of them had liability coverage and the other did not. In those circumstances, the court concluded that the absence of liability coverage for either one was sufficient to trigger the injured parties' uninsured motorist coverage. *Hull*, 222 Wis. 2d at 645–46 ¶¶ 25–26. In that situation, where it was not

[5] We adopt the U.S. monetary figures provided above from the trial court's decision. These figures apparently were based on an exchange rate of $1.00 U.S. equal to $1.455 Canadian.

clear under the policy's terms whether the coverage applied, the court found ambiguity and construed the policy to provide coverage, because its failure so to do would have contravened the legislative purpose of the statute.

¶ 21. Here, Unrau was both the owner and driver of the vehicle. He had liability insurance at the time of the accident. For the reasons discussed above, we conclude that the term "uninsured vehicle" is not ambiguous within the circumstances of this case. We further conclude that the limits of liability applicable to Unrau's vehicle at the time of the accident exceed the minimum liability insurance requirements of Wisconsin's Financial Responsibility Act. Therefore, there being no material facts at issue, we affirm the trial court's granting of summary judgment in favor of State Farm on this issue.

¶ 22. We consider next whether the underinsured motorist clauses in Thomas Ostlund's insurance policies apply to the facts of this case. The underinsured motorist insuring clauses, which are the same in both policies, provide in material part: "We [State Farm] will pay damages for *bodily injury* an *insured* [Ostlund and Gillette] is legally entitled to collect from the owner or driver [Unrau] of an *underinsured motor vehicle.*"

¶ 23. At the time of the accident, underinsured motor vehicle coverage was not mandated by Wisconsin law.[6] An "underinsured motor vehicle" is defined in the policy as a vehicle for which the owner and driver

---

[6] Insurers are now required to offer underinsured motorist coverage by WIS. STAT. § 632.32(4m). This statute first applied to policies renewed after October 1, 1995. The applicable renewal of Ostlund's policies did not occur until after the October 11, 1995 accident.

are covered by liability insurance but with limits of liability which "are less than the amount of the *insured's* damages." The policies provide that underinsured motorist benefits are not payable: "UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS." Upon exhaustion of those limits of liability, State Farm will pay "the difference between the amount of the *insured's* damages for *bodily injury*, and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*."

¶ 24. State Farm thus promises to pay its insureds the difference between the maximum amount they are able to collect from a tortfeasor's liability insurer, and the amount they are legally entitled to collect as damages from the tortfeasor and/or his liability insurer.[7] The policy contemplates the following analysis to resolve the issue:

### Deciding Fault and Amount

Two questions must be decided by agreement between the *insured* and us:
1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and
2. If so, in what amount?

---

[7] If this difference is greater than the policy limits for underinsured motor vehicle coverage, the limits of liability of the coverage define appellants' maximum recovery.

¶ 25. The term "legally entitled to recover"[8] has been interpreted by the Wisconsin Supreme Court in *Sahloff v. Western Casualty & Surety Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969). In *Sahloff*, the court held that the phrase "legally entitled to recover" "was used only to keep the fault principle as a basis for recovery against the insurer and deals with the question of whether the negligence of the uninsured[9] motorist and the absence of contributory negligence is such as to allow the insured to recover." *Id.* at 68–69.

¶ 26. In this case, the parties agree that Ostlund and Gillette were not negligent. Therefore, using fault principles as the basis for recovery, they are legally entitled to collect from Unrau.

¶ 27. Were the issue so simple, our analysis would end. However, in Manitoba, the injured party may *not* collect damages for pain and suffering or for any other noneconomic injury. Ostlund and Gillette seek to recover their noneconomic damages from State Farm even though they cannot recover such damages from Unrau under Manitoba law.

¶ 28. *Sahloff* is instructive. There the court held as follows:

> Although the phrase "legally entitled to recover" appears both in WIS. STAT. § 204.30(5)(a) [renumbered WIS. STAT. § 632.32(4)(a)], and in the uniform uninsured motorist coverage, we find no

[8] The phrase used in the State Farm policy is "legally entitled to collect." We discern no significant legal distinction between the two phrases.

[9] While the court in *Sahloff v. Western Casualty & Surety Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969) construed the phrase as applicable to uninsured motorist coverage, we conclude the construction is equally applicable to underinsured motorist coverage.

basis in the history of the statute or of the endorsement that coverage should be restricted to those situations in which the insurer can stand in the shoes of the uninsured motorist. The purpose and intent of this type of coverage was to benefit the insured so that he would be reimbursed for his injuries. The purpose was not to provide free liability insurance for an otherwise uninsured motorist; and the endorsement does not do so because a right of subrogation does exist, if the insurer wishes to preserve it. In settling a claim under the endorsement, the insurer does not represent the uninsured motorist but rather itself on its own contract against its own insured who has paid a premium for this indemnity feature in his liability policy. *It is neither necessary under the coverage nor desirable public policy to place the indemnity insurer in exactly the same position of a liability insurer of an uninsured motorist.* Consequently the claim against the insurer on the endorsement should be and is treated differently than the cause of action the insured has against the uninsured motorist.

We are not sympathetic with the argument that because the plaintiff's claim against his insurer is founded upon the negligent tort of the uninsured motorist it should be governed by the same considerations as an action for negligence. This is another phase of the argument that the insurer stands in the shoes of the uninsured motorist and therefore should have all his rights. The insurer has not so contracted in the uninsured motorist endorsement. We think it clear the action by an insured against his insurer under the uninsured motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured must prove the negligence of an uninsured motorist. Western Casualty's argument to base an interpretation upon the considerations of

the tort action would invoke a new standard of construction of contractual language.

*Sahloff*, 45 Wis. 2d at 69–70 (emphasis added).

¶ 29. We conclude that there are only two requirements under the contract for the underinsured motor vehicle coverage to be triggered: (1) causal negligence on the part of an underinsured motorist, and (2) damages resulting from the accident that the at-fault motorist's insurance does not cover.

¶ 30. These two requirements are conceded by State Farm. Therefore, the underinsured motor vehicle coverage is applicable here, and we conclude that its application is wholly independent of any restrictions imposed by the applicable law in the state or territory[10] where the accident occurred which limits or restricts an insured's ability to recover damages from the tortfeasor.

¶ 31. As was stated in *Sahloff*, it is neither necessary under the policy language, nor desirable public policy, to place State Farm in exactly the same position as Unrau or MPIC. State Farm has not preserved for itself in its contract with Ostlund all of Unrau's rights or immunities. Ostlund has paid a premium for underinsured motorist indemnity coverage in State Farm's liability policy. By use of the language "legally entitled to collect," State Farm did not embrace, for itself, all the rights of the at-fault underinsured motorist and, as drafter of the contract, it was in a position to do so, had that been the intent.

¶ 32. State Farm also argues that because the limits of liability of Unrau's policy have not been "used

---

[10] We note that the policy provides that the "loss of earnings coverages apply anywhere in the world," and that coverage was specifically provided in Canada.

up," the underinsured coverage in the State Farm policies is not available. We disagree. It is true that a claim for underinsured motorist benefits is precluded by Wisconsin case law, which interprets similar contract provisions, if a claimant settles the liability portion of the claim for less than the policy limits.[11] It is undisputed, however, that Ostlund and Gillette will not be able to recover noneconomic damages from Unrau's liability carrier. As a result, the policies' requirement that "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS" does not preclude Ostlund and Gillette from claiming noneconomic damages from State Farm.

¶ 33. We conclude that the clause requiring Unrau's liability coverage to be "used up" is not ambiguous in this policy. *See Danbeck v. American Family Mut. Ins. Co.*, 2000 WI App 26, ¶ 10, 232 Wis. 2d 417, 605 N.W.2d 925 (Ct. App. 1999), *review granted*, 2000 WI 36, 234 Wis. 2d 175, 612 N.W.2d 732. The contract clause is wholly unrelated to Manitoba's legislation which bars noneconomic damages recovery in motor vehicle accidents. Therefore, underinsured motorist benefits are not precluded by this provision.

## CONCLUSION

¶ 34. We conclude that Ostlund and Gillette are not entitled to uninsured motorist benefits under the policy and affirm that portion of the trial court's ruling.

---

[11] *See Davis v. American Family Mut. Ins. Co.*, 212 Wis. 2d 382, 386, 569 N.W.2d 64 (Ct. App. 1997), and *American Family Mut. Ins. Co. v. Powell*, 169 Wis. 2d 605, 608, 486 N.W.2d 537 (Ct. App. 1992).

We conclude, however, that Gillette and Ostlund are entitled to underinsured motorist benefits under the policy, and therefore reverse that portion of the trial court's decision.

*By the Court.*—Judgment affirmed in part and reversed in part.