FITZPATRICK, J.
¶ 1 *550 Security Health Plan of Wisconsin Inc. issues group health insurance plans, and American Family[1] issues automobile insurance policies, in Wisconsin. Forty-two persons who were insured by both Security Health and American Family were involved in separate auto accidents and, as a result, each incurred medical expenses. Security Health paid for most of those medical expenses and sued American Family in the Portage County Circuit Court requesting the following relief: a declaratory judgment that American Family rather than Security Health is required to pay for those medical expenses; and a money judgment for the total amount allegedly owed by American Family to Security Health. American Family filed a motion for summary judgment, and Security Health filed a motion for declaratory judgment. *551 The circuit court granted declaratory judgment in favor of Security Health and a money judgment in the principal amount of $165,799.30 against American Family. American Family appeals and argues that it owes nothing to Security Health for those medical expenses paid by Security Health. We agree with American Family, reverse the order of the circuit court, and remand the matter for judgment to be granted in favor of American Family.
BACKGROUND
¶ 2 The parties do not dispute the following material facts.
¶ 3 Security Health is a health insurance company that issues group health insurance plans in Wisconsin. American Family issues automobile insurance policies in this state, and each of the pertinent American *343 Family policies includes coverage for the payment of medical expenses.
¶ 4 This lawsuit concerns forty-two separate claims regarding the payment of medical expenses. Each of the claims is a separate reimbursement demand made by Security Health against American Family.
¶ 5 Each claim involves a different motor vehicle accident and a separate injured person who was, at all relevant times, insured by both Security Health and American Family. Each insured obtained medical treatment for his or her injuries and incurred bills for that medical treatment. For a few of the insureds, both Security Health and American Family paid for incurred medical expenses but, for the most part, only Security Health made payments for the medical expenses incurred by the parties' insureds.
*552 ¶ 6 Although each of the insureds was enrolled in a separate Security Health group health plan, each Security Health plan used the same Security Health plan form which contains identical, applicable language. Similarly, while each insured was covered through a separate American Family policy, the pertinent language in each American Family policy is identical.
¶ 7 Security Health and American Family have stipulated to the date of each loss, the amounts paid, and the net amount of Security Health's forty-two claims against American Family, $165,799.34. No party disputes the necessity of the medical treatment or the reasonableness of amounts charged for the medical treatment.
¶ 8 Security Health commenced this action requesting declaratory relief that American Family rather than Security Health was required to pay the medical bills for each of the forty-two claims. Related to that request for declaratory relief was Security Health's demand for a money judgment against American Family for the $165,799.34 net amount paid by Security Health for the medical expenses. For its part, American Family denies that it owes any amount to Security Health for any of the medical expenses paid by Security Health related to these forty-two claims.
¶ 9 American Family filed a motion for summary judgment seeking denial of Security Health's requests for relief. Security Health filed a motion for declaratory judgment in support of its requests for relief. The circuit court granted Security Health's motion for declaratory judgment, denied American Family's motion for summary judgment, and entered judgment against American Family in the principal amount of $165,799.30. American Family appeals.
*553 ¶ 10 We will mention other pertinent facts in the Discussion that follows.
DISCUSSION
¶ 11 The parties concur that the question of whether American Family is required to reimburse Security Health for the amounts Security Health paid for medical expenses of the insureds is controlled by WIS. ADMIN. CODE § INS 3.40 (Dec. 2017) and WIS. STAT. § 632.32(4) (2015-2016).[2]
¶ 12 WISCONSIN ADMIN. CODE § INS 3.40 regulates how a health insurance plan may interact with other insurance policies, such as automobile insurance, regarding the payment of a common insured's medical *344 bills.[3] Section INS 3.40(1) states that the "purpose" of the administrative rule is to avoid "claim payment delays," provide "authority for the orderly transfer of information needed to pay claims promptly," and contain "health care costs." *554 Sec. INS 3.40(1)(b), (c). Section INS 3.40(1) also observes that, in the area of insurance regulation, "uniformity [is] needed" to protect the interests of the insureds and the interests of the public, and to reduce litigation. Sec. INS 3.40(1)(a), (c).
¶ 13 To achieve those goals, the "coordination of benefits" terms of WIS. ADMIN. CODE § INS 3.40 govern which plan is "primary" (pays first) and which plan is "secondary" (pays after the primary policy limits are exhausted) when there are two sources of insurance available to pay an insured's medical expenses. Sec. INS 3.40(2), (3)(j)-(k), and (11). Also, § INS 3.40(16) contains a "Right of Recovery" that Security Health is attempting to invoke against American Family in this lawsuit. That provision states that, if an insurer pays "more than it should have paid" under the coordination of benefits provision just mentioned, the insurer then has the right to recover the excess paid from an insurance company that was required to pay the amount. Sec. INS 3.40(16)(b).
¶ 14 The provisions of WIS. ADMIN. CODE § INS 3.40 apply only if the coverage provided by the health insurer, here Security Health, and by the automobile insurer, here American Family, is each a "plan" as defined in § INS 3.40. See § INS 3.40(3)(i) and (8)(a). The parties agree that the coverage provided by Security Health is a "plan," and Security Health contends that the medical expense coverage in the American Family policies is a "plan," pursuant to § INS 3.40. The parties do not dispute that our determination of whether the American Family auto insurance policy's medical expense coverage is a "plan" is the initial step in our analysis and may be dispositive; that is, if the American Family medical expense coverage in its policies is not a "plan," then Security Health has neither the right to a declaratory judgment nor a money judgment *555 against American Family for the net amounts Security Health paid for medical expenses for the forty-two common insureds of Security Health and American Family.
¶ 15 Security Health contends that American Family's medical expense coverage in its auto insurance policies is a "plan" under WIS. ADMIN. CODE § INS 3.40 for two separate reasons, either of which is sufficient for Security Health to prevail on that issue. First, according to Security Health, American Family's medical expense coverage is "required by law" and, second, the medical expense coverage in the American Family policies is a "medical expense benefit" in an "individual automobile 'no-fault' contract."
¶ 16 For the reasons discussed below, we reject Security Health's arguments and conclude that American Family's medical expense coverage in its policies is not a "plan" as defined in WIS. ADMIN. CODE § INS 3.40. Therefore, Security Health has no right of reimbursement against American Family for the medical expenses Security Health paid for the parties' mutual insureds.
*345 I. Standard of Review and Interpretation of Statutes and Administrative Regulations.
¶ 17 Summary judgment must be granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). "We review de novo the grant or denial of summary judgment and apply the same methodology and standards as the circuit court." Town of Grant v. Portage Cty. , 2017 WI App 69, ¶ 8, 378 Wis.2d 289, 903 N.W.2d 152. In this case, because there are no *556 disputed material facts, we must determine which party is entitled to judgment as a matter of law. Sec. 802.08(2) ; Town of Grant , 378 Wis.2d 289, ¶ 12, 903 N.W.2d 152.
¶ 18 Security Health's request for declaratory relief presents a question of law regarding the interpretation of insurance policies in this regulatory context. Olson v. Farrar , 2012 WI 3, ¶ 24, 338 Wis.2d 215, 809 N.W.2d 1 (citing Estate of Sustache v. American Family Mut. Ins. Co. , 2008 WI 87, ¶ 18, 311 Wis.2d 548, 751 N.W.2d 845 ); see also Fontana Builders, Inc. v. Assurance Co. of Am. , 2016 WI 52, ¶ 48, 369 Wis.2d 495, 882 N.W.2d 398. We review these questions about insurance coverage independent of the circuit court's analysis. Olson , 338 Wis.2d 215, ¶ 24, 809 N.W.2d 1 (citing Bellile v. American Family Mut. Ins. Co. , 2004 WI App 72, ¶ 6, 272 Wis.2d 324, 679 N.W.2d 827 ).
¶ 19 Our analysis depends on the proper interpretation of a statute, and that presents a question of law. Town of Grant , 378 Wis.2d 289, ¶ 9, 903 N.W.2d 152. An issue of law, such as the interpretation of a statute, is reviewed de novo. Bass v. Ambrosius , 185 Wis.2d 879, 883 n.3, 520 N.W.2d 625 (Ct. App. 1994).
¶ 20 Statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, the inquiry is ordinarily stopped. State ex rel.Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. Statutory language is generally given its common, ordinary, and accepted meaning, but technical words and phrases and those with a particular meaning in the law are construed according to that meaning. Id. Context and structure *557 are important to the analysis. Id. , ¶ 46. So, statutory language is interpreted in the context in which it is used and as part of a whole rather than in isolation. Id. Statutory provisions that address the same matter should be addressed in harmony if possible such that each has force and effect. Belding v. Demoulin , 2014 WI 8, ¶ 17, 352 Wis.2d 359, 843 N.W.2d 373.
¶ 21 Our analysis also depends on the proper interpretation of administrative rules, and that is also a question of law that we review de novo. Racine Harley-Davidson, Inc. v. State , 2006 WI 86, ¶ 14, 292 Wis.2d 549, 717 N.W.2d 184, abrogated on other grounds by Tetra Tech EC, Inc. v. DOR , 2018 WI 75, 382 Wis.2d 496, 914 N.W.2d 21 ; Orion Flight Servs., Inc. v. Basler Flight Serv. , 2006 WI 51, ¶ 18, 290 Wis.2d 421, 714 N.W.2d 130. We interpret administrative rules in the same manner as statutes. Orion , 290 Wis.2d 421, ¶ 18, 714 N.W.2d 130.
¶ 22 We now consider Security Health's arguments that the medical expense coverage in American Family's policies is a "plan" pursuant to WIS. ADMIN. CODE § INS 3.40.
II. Is the Medical Expense Coverage in the American Family Policies "Required by Law"?
¶ 23 As noted, Security Health argues that the medical expense coverage in American Family's policies is a "plan" because it is "required ... by law."
*346 WISCON SIN ADMIN. CODE § INS 3.40, Appendix A, II(C)(ii) defines "plan" in this circumstance and states in pertinent part:
(C) ... any of the following which provides benefits ... for, or because of, medical ... care or treatment:
*558 ....
(ii) Coverage ... that is required ... by law .
Sec. INS 3.40, Appendix A, II(C)(ii) (emphasis added).[4]
¶ 24 According to Security Health, the medical expense coverage in the American Family policies is "required by law" because of language in WIS. STAT. § 632.32(4)(a)2. that concerns automobile insurance policies in Wisconsin and states:
(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES .
(a) Except as provided in par. (d),[5] every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall contain therein or supplemental thereto provisions for all of the following coverages :
....
2. Medical payments coverage , in the amount of at least $1,000 per person.
Section 632.32(4)(a)2. (emphasis added).[6]
*559 ¶ 25 If WIS. STAT. § 632.32(4) ended as just quoted, we could agree with Security Health that medical expense coverage such as that in the American Family policies is required by law. However, the statute contains an exception that makes all the difference. That exception states: "Notwithstanding par. (a)2., the named insured may reject medical payments coverage ." Sec. 632.32(4)(bc) (emphasis added). In light of the plain language of that exception, we conclude that Security Health's argument fails.
¶ 26 We now interpret the applicable portions of WIS. ADMIN. CODE § INS 3.40 and WIS. STAT. § 632.32(4) and apply those in context. More specifically, we interpret the controlling phrase in § INS 3.40 that defines "plan" in this instance as "coverage ... that is required ... by law." We also interpret the phrases in § 632.32(4)(a) that state:
[E]very policy of insurance ... shall contain therein ... provisions for all of the following coverages: ...
....
2. Medical payments coverage.
*347 *560 Finally, we interpret the provision of § 632.32(4)(bc) which states: "Notwithstanding par. (a)2., the named insured may reject medical payments coverage."
¶ 27 We begin by discussing the meaning of the terms "required," "coverage," "policy," and "reject" as used in WIS. ADMIN. CODE § INS 3.40 and WIS. STAT. § 632.32(4) because those meanings are critical to the analysis.
A. "Required."
¶ 28 The word "required" is not defined in WIS. ADMIN. CODE § INS 3.40 or the Wisconsin Insurance Code, WIS. STAT. chs. 600-655. In this instance, the term is not used in a technical sense or with any particular meaning in the law, so we assign to that word its "common, ordinary, and accepted meaning," and we must interpret the term in context. Kalal , 271 Wis.2d 633, ¶¶ 45-46, 681 N.W.2d 110 ; Orion , 290 Wis.2d 421, ¶ 18, 714 N.W.2d 130 ; see also WIS. STAT. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.").
¶ 29 In interpreting statutes and administrative rules so as to determine their ordinary and plain meaning, we may consult a dictionary. Rouse v. Theda Clark Med. Ctr., Inc. , 2007 WI 87, ¶ 21, 302 Wis.2d 358, 735 N.W.2d 30 ("When giving a statute its plain and ordinary meaning, courts refer to dictionaries to define those terms not defined by the legislature."). The common definition of "required," as used in conjunction with the phrase "by law," means an act that must be done because of a law. See Requirement , *561 BLACK'S LAW DICTIONARY (10th ed. 2014) ("Something that must be done because of a law or rule; something legally imposed, called for, or demanded."); see also Require , WEBSTER'S SECOND NEW COLLEGE DICTIONARY (1995) ("To impose an obligation on.").
B. "Coverage."
¶ 30 We next consider the meaning of the term "coverage" because it is mentioned once in the operative phrase from WIS. ADMIN. CODE § INS 3.40 and three times in the controlling portions of WIS. STAT. § 632.32(4). "Coverage" is not defined in § INS 3.40 or the Wisconsin Insurance Code, WIS. STAT. chs. 600-655. But, the term, as used in that administrative rule and § 632.32(4), is a technical term with a particular meaning within the law, and we construe it in that manner by reviewing Wisconsin case law. See Kalal , 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110 ; Voters with Facts v. City of Eau Claire , 2018 WI 63, ¶ 32, 382 Wis.2d 1, 913 N.W.2d 131 ; WIS. STAT. § 990.01(1).
¶ 31 In that case law, "coverage" means insurance for certain risks, the type and extent of which is determined by the language of an insurance policy. See Society Ins. v. Town of Franklin , 2000 WI App 35, ¶ 5, 233 Wis.2d 207, 607 N.W.2d 342 ("The language of the policy, which is a contract negotiated by the insurer and insured, determines the extent of coverage."); 43 AM. JUR. 2D Insurance § 467 (August 2018 Update). That conclusion is also drawn from the three-step process used by Wisconsin courts to determine if "coverage" is present. See Wadzinski v. Auto-Owners Ins. Co. , 2012 WI 75, ¶ 14, 342 Wis.2d 311, 818 N.W.2d 819, which states:
When determining whether a policy provides coverage, a court first looks to the initial grant of coverage....
*562 If the court determines that the initial grant of coverage does cover the type of claim presented, the second step requires the court to examine the policy's exclusions to determine whether coverage has been withdrawn by an exclusion. Third, if coverage *348 for the claim has been withdrawn by an exclusion, the court examines any exceptions to that exclusion that might reinstate coverage for the claim.
Id. , ¶ 14.
C. "Policy."
¶ 32 The definition of "coverage" is closely linked to the term "policy," which is defined at WIS. STAT. § 600.03(35) as: "any document ... used to prescribe in writing the terms of an insurance contract."[7] That definition of "policy" as a contract is confirmed by Wisconsin case law. See Marks v. Houston Cas. Co. , 2016 WI 53, ¶ 56, 369 Wis.2d 547, 881 N.W.2d 309 ("Insurance policies are contracts and are governed by the same rules that govern interpretation of contracts in general.") (internal citations omitted); see also Society Ins. , 233 Wis.2d 207, ¶ 5, 607 N.W.2d 342.
D. "Reject."
¶ 33 We next discuss the meaning of the word "reject" in context. Because of the use of the term "reject" in WIS. STAT. § 632.32(4), we conclude that, here, "reject" has "a peculiar meaning in the law" and must be "construed according to such meaning." WIS. STAT. § 990.01(1).
¶ 34 As noted, an insurance policy is a contract and, like all contracts, "[i]n order that a contract may *563 arise, three things must concur: first, the offer; second, the acceptance; and, third, the consideration." Marks , 369 Wis.2d 547, ¶ 56, 881 N.W.2d 309. The term "reject" in the contractual sense is used to describe a response of an offeree that does not accept an offer as made and, as a result, the parties did not complete the process of entering into an agreement. See Fricano v. Bank of Am. NA , 2016 WI App 11, ¶ 29, 366 Wis.2d 748, 875 N.W.2d 143 ("[A]n acceptance that varies the terms of the offer constitutes a rejection."); Leuchtenberg v. Hoeschler , 271 Wis. 151, 155, 72 N.W.2d 758 (1955) ("The acceptance of an offer upon terms varying from those of the offer, however slight , is a rejection of the offer.") (internal citation omitted). Put otherwise, to "reject" an offer means not to complete the contract formation process of offer and acceptance but, instead, the contract formation process fails because of the rejection. We also note that, of course, one cannot "reject" a contract that has already been formed.
E. Analysis.
¶ 35 With those definitions, and the pertinent language in WIS. ADMIN. CODE § INS 3.40 and WIS. STAT. § 632.32(4), as touchstones we now discuss whether the medical payment coverage in the American Family policies is "required by law."
¶ 36 For clarity, we repeat the pertinent language of WIS. STAT. § 632.32(4)(a)2. :
[E]very policy of insurance ... shall contain therein ... provisions for all of the following coverages:
....
2. Medical payments coverage.
*564 From that language, including the term "policy," it is clear that the parties to a completed automobile insurance contract are both required ("every policy ... shall contain") to enter into only those contracts that include a certain type of insurance, here, medical payments coverage. As noted earlier, if the statute ended there, we could conclude that medical payments coverage must be part of every Wisconsin automobile insurance policy; in other words, it *349 would be "required by law" because the statute demands it.
¶ 37 However, WIS. STAT. § 632.32(4) also includes this language: "Notwithstanding par. (a)2., the named insured may reject medical payments coverage." Sec. 632.32(4)(bc).[8] For several reasons, we conclude that this statutory language leads to the conclusion that the American Family medical expense coverage is not "required by law."
¶ 38 We start by considering the word "notwithstanding." That term has a particular meaning in Wisconsin statutory interpretation. It indicates "in spite of" with a preemptive effect against referenced statutes. See Maurin v. Hall , 2004 WI 100, ¶¶ 37-40, 274 Wis.2d 28, 682 N.W.2d 866 (in which our supreme court noted that usage of the term "notwithstanding"
*565 has preemptive effect, and a common definition of "notwithstanding" is "in spite of"); Adams v. State Livestock Facilities Siting Review Bd. , 2012 WI 85, ¶ 43, 342 Wis.2d 444, 820 N.W.2d 404 ("notwithstanding" is not ambiguous and means "in spite of"); HMO-W Inc. v. SSM Health Care Sys. , 2003 WI App 137, ¶¶ 23-24, 266 Wis.2d 69, 667 N.W.2d 733 (use of the term "notwithstanding," together with a reference to two other statutes, had preemptive effect against any contrary provisions from those two statutes). So, the use of the term "notwithstanding" in WIS. STAT. § 632.32(4)(bc) means that it preempts contrary provisions in § 632.32(4)(a)2.
¶ 39 The use of the term "reject" also informs our interpretation of WIS. STAT. § 632.32(4)(bc). As discussed earlier, here the term "reject" is used in the context of contract formation. Regarding a potential insurance contract, an offer is made by an insurer to a potential insured, and that person may decline or reject an offer. A rejection negates the formation of the contract. In this situation, because of the use of the term "reject," § 632.32(4)(bc) clearly concerns a scenario in which no insurance contract has yet been entered into, and the legislature grants the potential insured the option to accept or reject medical payments coverage before entering into the insurance contract.
¶ 40 Consistent with the legislature's use of the term "notwithstanding" in WIS. STAT. § 632.32(4)(bc), the scenario just described stands in contrast to the scenario described in § 632.32(4)(a)2. There, the insured, in order to obtain the Wisconsin automobile insurance policy, must agree to the medical payments coverage. In essence, § 632.32(4)(a)2. leaves both parties to the insurance contract no choice but to agree to *566 the medical payments coverage in the policy. More specifically, § 632.32(4)(a)2. demands that medical payments coverage must be agreed to in both the offer of the insurance company and the acceptance by the insured. By any reasonable definition of the phrase, that coverage is "required by law" as both the insurer and the insured must act in a certain manner and agree to put medical payments coverage in the policy, because of a law, in order to enter into an insurance contract. *350 ¶ 41 But, the same is not true with WIS. STAT. § 632.32(4)(bc). As noted, § 632.32(4)(a)2. demands that the completed insurance contract must include medical payments coverage. But, by operation of § 632.32(4)(bc), and because the legislature allows the insured, during the contract formation process, to reject or decline the medical payments coverage, that requirement of § 632.32(4)(a)2. is negated. In doing so, the legislature does not demand or obligate both parties to the insurance contract to agree to medical payments coverage. For the reason that § 632.32(4)(a)2., as viewed in isolation, requires certain coverage because of a law, the language of § 632.32(4)(bc) necessarily leads to the conclusion that medical payments coverage is not "required by law" in the American Family automobile insurance policies.
¶ 42 In addition, to conclude that the American Family policies' medical expense coverage is required by law would require the addition of material and important terms to WIS. ADMIN. CODE § INS 3.40. Security Health's argument maintains, in effect, that § INS 3.40, in this situation, reads as follows: "coverage ... required by law to be offered by an insurer." The addition of that language would necessarily alter the *567 meaning of that administrative rule. As we will discuss again, below, the legislature has delegated to the Office of the Commissioner of Insurance the authority to promulgate regulations on this subject matter. See WIS. STAT. §§ 600.03(11), 631.23, and § INS 3.40(1)(a). To interpret § INS 3.40 as Security Health wishes would require the addition of language to the rule, and it would change the meaning of the rule. We are not given the authority to re-write administrative rules in this manner. See Adams v. State Livestock Facilities Siting Review Bd. , 2010 WI App 88, ¶ 41, 327 Wis.2d 676, 787 N.W.2d 941 (citing Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110 ).
¶ 43 Finally, WIS. STAT. § 632.32(4)(a)1. confirms that Security Health's argument fails. Subpart (a)1. of that statute states that uninsured motorist coverage, with certain limits per person and per accident, shall be contained in every Wisconsin automobile insurance policy. Immediately after that language is the reference to the medical payments coverage we have discussed. However, there is no exception in § 632.32(4) for a potential insured to decline the uninsured motorist coverage in the same way that the medical payments coverage can be declined. This illustrates the difference between the uninsured motorist coverage, which by any reasonable definition is "required by law," and the medical payments coverage, which can be declined or rejected, and is not "required by law."
¶ 44 Moreover, we reject each of Security Health's related arguments that go beyond consideration of the plain language of the applicable statute and the administrative rule.
¶ 45 First, Security Health relies on the title of WIS. STAT. § 632.32(4)(a), which states that uninsured motorist and medical payments coverage is "required."
*568 But, Security Health concedes that "a title may not be used to alter the meaning of a statute or create an ambiguity where no ambiguity existed." Noffke ex rel. Swenson v. Bakke , 2009 WI 10, ¶ 25, 315 Wis.2d 350, 760 N.W.2d 156. See also WIS. STAT. § 990.001(6) (the title of a statute is not part of the statute itself). Because we conclude that there is no ambiguity in the applicable statutory language, we need not rely on the title of the provision.
¶ 46 Second, Security Health argues that there is "no authority" that medical payments coverage in automobile insurance policies is not required under Wisconsin law. We construe Security Health's cryptic argument to mean that no Wisconsin appellate *351 opinion has, before now, come to that conclusion. However, Security Health points to no Wisconsin appellate opinion that came to the contrary conclusion. Therefore, this argument carries no weight.
¶ 47 Third, Security Health points out that none of American Family's forty-two insureds whose claims are the basis of this lawsuit rejected medical expense coverage. Based on that premise, Security Health draws the conclusion that the medical payments coverage in American Family's insurance policies is required by law. But, Security Health does not tie its premise to its conclusion by any cogent argument. At any rate, Security Health's argument refers only to self-selection by the parties' common insureds. In other words, it will necessarily be the case that each of the forty-two American Family named insureds whose claims are the basis for this lawsuit chose the medical expense coverage. If they had not, those insureds' claims would not be part of this action. So, Security Health's argument goes nowhere.
*569 ¶ 48 For those reasons, we conclude that the medical expense coverage in the American Family policies is not "required ... by law" as that phrase is used in WIS. ADMIN. CODE § INS 3.40, Appendix A, II(C)(ii).
¶ 49 We now discuss Security Health's alternative argument to support its assertion that American Family's medical expense coverage is a "plan" pursuant to WIS. ADMIN. CODE § INS 3.40.
III. Is the American Family Medical Expense Coverage a "No-Fault" Contract?
¶ 50 Next, Security Health contends that the medical expense coverage in the American Family policies qualifies as a "plan" as defined in WIS. ADMIN. CODE § INS 3.40 because that medical expense coverage is "an individual automobile 'no-fault' contract." Security Health relies on § INS 3.40(6)(f) which contains the following definition of the term "plan":
[I]nclude the medical benefits coverage in group, group-type, and individual automobile "no-fault" contracts; but, as to the traditional automobile "fault" contracts, only the medical benefits written on a group or group-type basis may be included .[9]
Sec. INS 3.40(6)(f) (emphasis added).
¶ 51 The parties agree that this question turns on whether the medical expense coverage in the American *570 Family policies is, in the parlance of WIS. ADMIN. CODE § INS 3.40(6)(f), a separate "automobile 'no-fault' contract." Security Health argues that the medical coverage provision itself is a "separate and individual" "automobile 'no-fault' contract." We now discuss, and reject, the portion of Security Health's argument that the American Family medical expense coverage is "no-fault" as that term is used in § INS 3.40(6)(f).
¶ 52 Security Health concedes that the Wisconsin statutes concerning automobile insurance are not a "no-fault" insurance code, and Wisconsin has never gone the route of some neighboring states, such as Minnesota, in creating a statutory "no-fault" insurance scheme for automobile accidents. See Koshiol v. American Family Mutual Insurance Co. , 171 Wis.2d 192, 196, 491 N.W.2d 776 (Ct. App. 1992) ("Wisconsin has no similar act" to the Minnesota *352 No-Fault Automobile Insurance Act.) Security Health then contends that, under WIS. ADMIN. CODE § INS 3.40(6)(f), while the liability coverage in each American Family policy is "traditional automobile 'fault' " coverage, the medical coverage in each American Family policy is "automobile 'no-fault' " coverage. More specifically, Security Health contends that, because the American Family medical expense coverage does not require a finding of liability or fault before payments are made, that coverage qualifies as "no-fault" as that phrase is used in § INS 3.40(6)(f).
¶ 53 For this, Security Health relies exclusively on language in this court's holding in Gurney v. Heritage Mut. Ins. Co. , 188 Wis.2d 68, 74, 523 N.W.2d 193 (Ct. App. 1994). Gurney was injured through what she claimed was the fault of Heritage Mutual's insured, and Gurney sued Heritage Mutual and its insured. But, she initiated the action months after the three-year *571 statute of limitations expired. Gurney argued that WIS. STAT. § 893.12[10] allowed an extension of the limitations period because Heritage Mutual made a payment toward her medical expenses pursuant to the medical expense coverage part of its policy. Id. at 70, 523 N.W.2d 193. This court framed the issue narrowly: "The sole issue on appeal is whether a payment made by Heritage Mutual to Pearl Gurney and her physician was a 'payment' within the meaning of § 893.12, Stats., which extends the statute of limitations in certain situations where payments are made to personal injury claimants." Id. We concluded that the limitation period is extended "only when payments related to settlement of disputed claims, or to considerations of fault or liability, are made on behalf of the insured." Id. at 71, 523 N.W.2d 193. Because there was "no reference to legal responsibility or fault in the medical payment provisions," we concluded that the payment did not extend the statute of limitations. Id. at 74, 523 N.W.2d 193.[11]
¶ 54 From the holding in Gurney , Security Health asks us to take the leap to conclude that the American Family medical expense coverage is, as described in WIS. ADMIN. CODE § INS 3.40(6)(f), "no-fault." For several reasons, we are not persuaded.
*572 ¶ 55 First, our holding in Gurney was specifically limited to the interpretation of a statute, WIS. STAT. § 893.12, which has no relevance to our analysis in this case. The phrase "no-fault" does not appear in Gurney , and Gurney did not consider the language of WIS. ADMIN. CODE § INS 3.40. Also, there is no discussion in Gurney of the statutory "no-fault" scheme regarding automobile accidents that has been adopted in Minnesota and other states. No reading of Gurney , no matter how liberal, leads to the conclusion that we declared that all medical expense coverage in an automobile insurance policy is "no-fault" for purposes of § INS 3.40(6)(f). Gurney 's use of the phrase "no reference to legal responsibility or fault" in relation to medical expense coverage concerning an entirely different issue than the one before us does not transform American Family's medical expense coverage in these policies *353 into "no-fault" as that phrase is used in § INS 3.40(6)(f).
¶ 56 Second, we decline to characterize the phrase "no-fault" in the overly-broad and generalized fashion advocated by Security Health. As we will now discuss, based on the technical meaning of the term, the context of the use of the phrase "no-fault" in WIS. ADMIN. CODE § INS 3.40(6)(f) and related administrative rules, and the consistent meaning of the phrase in case law, we conclude that, here, the meaning of "no-fault" refers to a statutory scheme regarding car accident insurance that is available in some states but not Wisconsin.
¶ 57 The language in this administrative rule must be interpreted in the context in which it is used, and not in isolation but as part of a whole, and in relation to the language of surrounding or closely related administrative rules.
*573 Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110. Also, we determine that the phrase "no-fault" is reasonably interpreted as used in a technical sense within insurance-related regulations and case law. Id. , ¶ 45 (technical terms are given their technical meaning); see also Voters with Facts , 382 Wis.2d 1, ¶ 32, 913 N.W.2d 131. With those precepts in mind, we consider the meaning of "no-fault" as used in WIS. ADMIN. CODE § INS 3.40(6)(f).
¶ 58 Both phrases "no-fault" and "fault" are in quotes and that is a cue that those phrases in the rule have a particular meaning in insurance law. Also, WIS. ADMIN. CODE § INS 3.40(6)(f) contains the phrases "traditional automobile fault contracts" and "automobile 'no-fault' contracts," and that clearly draws a distinction between the two types of contracts. Because, as the parties agree, Wisconsin does not have a "no-fault" statutory scheme for auto accidents as do some other states, the reasonable conclusion is that automobile insurance policies issued in Wisconsin are "traditional automobile fault" insurance policies.
¶ 59 In addition, the use of the hyphenated phrase "no-fault" is consistent with closely related administrative rules from the Office of the Commissioner of Insurance that refer to a specific type of insurance law or coverage. See WIS. ADMIN. CODE § INS 3.39(3)(a)2. ( Section INS 3.39 concerns the interaction of various types of insurance policies with disability insurance) ("The definition may provide that injuries shall not include injuries for which benefits are provided or available under any workers' compensation, employer's liability or similar law or motor vehicle no-fault plan , unless prohibited by law." (emphasis added)) and WIS. ADMIN. CODE § INS 3.46(4)(m)2.b. ( Section INS 3.46 concerns interaction of various types of insurance policies with long-term care and nursing home care insurance) ("Services for which benefits are *574 available under Medicare or other governmental programs, except Medicaid, or under a state or federal worker's compensation, employer's liability, occupational disease law, or any motor vehicle no-fault law ." (emphasis added)).
¶ 60 Case law also consistently brings into relief the conclusion that the phrase "no-fault" has a specific meaning as referring to the statutory scheme regarding auto accidents enacted in some other states, but not Wisconsin. See, e.g. , State Farm Mut. Auto. Ins. Co. v. Gillette , 2002 WI 31, ¶¶ 81 n.54, 82, 251 Wis.2d 561, 641 N.W.2d 662 (referring to statutes in Hawaii, Colorado, and New York as "no-fault law" and "no-fault automobile insurance law"); State Farm Mut. Auto. Ins. Co. v. Gillette , 2001 WI App 123, ¶ 13, 246 Wis.2d 561, 630 N.W.2d 527 ("Ostlund argue[s] that Manitoba's 'no-fault' automobile liability legislation...."); Koshiol , 171 Wis.2d at 196, 491 N.W.2d 776 ("Furthermore, the Minnesota cases are not persuasive because *354 they construe policies in light of the Minnesota No-Fault Act."); Schlussler v. American Family Mut. Ins. Co. , 157 Wis.2d 516, 524, 460 N.W.2d 756 (Ct. App. 1990) ("The provisions of Minnesota's no-fault statute were equally uncontested."); Petry v. St. Paul Fire & Marine Ins. Co. , 151 Wis.2d 343, 346, 444 N.W.2d 428 (Ct. App. 1989) ("Under Minnesota law, no automobile insurance policy may be issued unless it contains no-fault coverage for basic economic loss benefits.").
¶ 61 Finally, the language of WIS. ADMIN. CODE § INS 3.40(6)(f) undercuts Security Health's argument and confirms our conclusion. According to Security Health, all medical expense coverage in Wisconsin automobile insurance policies is "no-fault" because that coverage allows payments for medical expenses from an automobile accident regardless of liability or *575 fault. In other words, whether the automobile insurance "contract" is "fault" or "no-fault" makes no difference, and the mere presence of the medical expense coverage itself controls the analysis. But, if Security Health's assertion is correct, there is no reason for § INS 3.40(6)(f) to distinguish between "fault" and "no-fault" automobile insurance contracts as it does. Because Security Health's argument would nullify terms in § INS 3.40, it must fail.
¶ 62 For clarity, we repeat the pertinent portion of WIS. ADMIN. CODE § INS 3.40(6)(f) which defines "plan" as:
[M]edical benefits coverage in group, group-type, and individual automobile "no-fault" contracts; but, as to the traditional automobile "fault" contracts, only the medical benefits written on a group or group-type basis may be included.
Sec. INS 3.40(6)(f). If we accept Security Health's interpretation of § INS 3.40(6)(f) it would, in effect, define "plan" as any:
[M]edical expense benefits coverages in group, group-type and individual automobile contracts.
Sec. INS 3.40(6)(f). So, Security Health asks us to read out of the rule portions of § INS 3.40(6)(f). This, of course, we may not do. See Adams , 327 Wis.2d 676, ¶ 41, 787 N.W.2d 941 (citing Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110 ).
¶ 63 The legislature delegated to the Office of the Commissioner of Insurance the authority to promulgate regulations on this subject matter. See WIS. STAT. §§ 600.03(11), 631.23, and WIS. ADMIN. CODE § INS 3.40(1)(a). As was discussed above, the phrases "traditional ... fault" and "no-fault" have particular meanings *576 which bear on the proper interpretation of § INS 3.40(6)(f). To ignore those terms, as Security Health requests, would change the meaning of the rule. It is not within the authority of this court to re-write administrative rules by ignoring material terms that affect the proper interpretation of the rule. See Adams , 327 Wis.2d 676, ¶ 41, 787 N.W.2d 941. Accordingly we decline Security Health's request to re-draft § INS 3.40(6)(f).
¶ 64 Therefore, we reject Security Health's assertion that the American Family medical expense coverage is "no-fault" as that phrase is used in WIS. ADMIN. CODE § INS 3.40(6)(f). Because of our resolution of that sub-issue, we need not reach the other sub-issue of whether that coverage within the American Family policies is "a separate and individual" "automobile insurance policy." See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis.2d 628, 673 N.W.2d 716 (where one issue disposes of the appeal, we need not reach other issues); see also Sweet v. Berge , 113 Wis.2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).
CONCLUSION
¶ 65 In sum, we conclude that the American Family medical expense coverage is *355 not a "plan" under WIS. ADMIN. CODE § INS 3.40. As a result, Security Health has no right to reimbursement from American Family for the medical bill payments Security Health made on behalf of the forty-two common insureds of Security Health and American Family, and American Family is entitled to summary judgment.
¶ 66 For those reasons, the judgment of the circuit court is reversed and this matter is remanded with direction to enter summary judgment in favor of American Standard Insurance Company of Wisconsin *577 and American Family Mutual Insurance Company, and for all other proceedings consistent with this opinion.
By the Court. -Judgment reversed and cause remanded with directions.
¶ 67 I agree with the analysis in section III of the opinion concluding that the American Family medical expense coverage does not qualify as a "plan" as defined in WIS. ADMIN. CODE § INS 3.40 (Dec. 2017) because the medical expense coverage is not an individual automobile "no-fault" contract under § INS 3.40(6)(f). Majority, ¶ 64. But, I disagree with the analysis in section II of the opinion concluding that the medical expense coverage in the American Family policies is not "required ... by law" as that phrase is used in § INS 3.40, Appendix A, II(C)(ii). Majority, ¶ 48. However, I conclude that § INS 3.40(6)(f), which specifically precludes the medical expense coverage in the American Family individual automobile "fault" contracts at issue from qualifying as a "plan," controls the more general "required ... by law" provision in the rule's Appendix. Accordingly, I concur.
¶ 68 As the opinion explains, the legislature in WIS. STAT. § 632.32(4)(a)2. (2015-2016)[1] requires that every automobile insurance policy contain medical payments coverage, but the legislature in § 632.32(4)(bc) allows an insured to reject that coverage. Majority, ¶¶ 36-37. From this, the opinion reasons that the coverage requirement applies only to the *578 policy being offered, and concludes that because the offer may be rejected, the coverage requirement is no longer a requirement. Majority, ¶ 41. I respectfully disagree. I see no "offer" language in the statute. The contain-medical-payments-coverage requirement in § 632.32(4)(a)2. applies only to a "policy." Under the plain language of §§ 632.32(4)(a)2. and 632.32(4)(bc), an automobile insurance policy that contains medical payments coverage does so only where such coverage has not been rejected, because in that case such coverage is required. Thus, the medical payments coverage that is contained in an automobile insurance policy is coverage that is "required ... by law" and is therefore a "plan" under WIS. ADMIN. CODE § INS 3.40, Appendix A, II(C)(ii).
¶ 69 Such a conclusion directly conflicts with the opinion's interpretation of WIS. ADMIN. CODE § INS 3.40(6)(f), with which I agree. By its plain language, that provision states that medical benefits coverage in individual automobile "fault" contracts, such as those at issue, may not be a "plan": "as to the traditional automobile 'fault' contracts, only the medical benefits written on a group or group-type basis may be [a 'plan']." § INS 3.40(6)(f). Where there is conflict between two statutes or rules, the more specific controls over the more general. Jones v. State , 226 Wis.2d 565, 575-76, 594 N.W.2d 738 (1999). So, *356 here, the more specific exclusion from a "plan" of medical benefits coverage in individual automobile "fault" contracts controls over the more general inclusion in a "plan" of medical benefits coverage required by law.[2] *579 ¶ 70 In sum, while I disagree with the opinion's analysis of WIS. STAT. §§ 632.32(4)(a)2. and 632.32(4)(bc) in conjunction with WIS. ADMIN. CODE § INS 3.40, Appendix A, II(C)(ii), I agree with the opinion's ultimate conclusion that the American Family medical expense coverage is not a "plan" under § INS 3.40. Therefore, I concur.

We will refer to the appellants, American Standard Insurance Company of Wisconsin and American Family Mutual Insurance Company, collectively as "American Family."

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted, and all references to the Wisconsin Administrative Code are to the December 2017 version unless otherwise noted. The parties do not contend that there have been any material amendments to the pertinent provisions of the Wisconsin Administrative Code since the start of this lawsuit.
Because none of the parties' insureds made a third-party claim, the parties agree that subrogation is not applicable.

The parties stipulate that the pertinent terms of the Security Health plans are consistent with the applicable provisions of Wis. Admin. Code § INS 3.40 and, for that reason, we will focus on the provisions of that administrative rule rather than the language in the Security Health plans.
Because the specifics of the American Family policies' medical expense coverage are not germane to our analysis, we will not cite the particular language of that coverage.

The parties agree that the American Family medical expense coverage "provides benefits ... for, or because of medical ... care or treatment," so we will focus on whether that coverage is "required ... by law."

Wisconsin Stat. § 632.32(4)(d) concerns commercial liability insurance and neither party contends that section is applicable here.

In this section, we use the phrase "medical expense coverage" when referring to the American Family policy as that is consistent with the policy language. We use the phrase "medical payments coverage" when referring to Wis. Stat. § 632.32(4)(a)2. because that statute uses the phrase. The parties do not contend that there is any material difference in the meaning of the two phrases.
Separately, we observe that the parties do not dispute the following: WISCONSIN STAT. § 632.32(4) is a "law"; the insurance policies described in § 632.32(4)(a) are the type of automobile insurance policies American Family issues in Wisconsin; the medical expense coverage in the automobile policies American Family issues in Wisconsin are "medical payments coverage" as that phrase is defined in § 632.32(2)(am) and as described in § 632.32(4)(a)2. ; and the medical expense coverage in the American Family automobile insurance policies is in the amount of at least $1,000 per person.

The definitions in Wis. Stat. § 600.03 apply to Wis. Stat. chs. 600-655. See Introduction to § 600.03.

The parties do not dispute that the reference to "par. (a)2." means the "medical payments coverage" language in Wis. Stat. § 632.32(4)(a)2.
Also, the meaning of the phrase "the named insured," as used in that portion of the statute, is not disputed by the parties, and the parties do not claim that it is material to the analysis. At any rate, the meaning of the term in this context is "the policyholder." This is the use of the term "named insured" in the American Family policies at issue and is consistent with the definition in Wis. Stat. § 600.03(26).

There is no dispute that the American Family medical expense coverage is "medical benefits coverage." In addition, there is no dispute that the American Family policies are not "group" or "group-type" contracts but, instead, are "individual ... contracts" as mentioned in Wis. Admin. Code § INS 3.40(6)(f).

Wisconsin Stat. § 893.12 states: "The period fixed for the limitation for the commencement of actions, if a payment is made as described in s. 885.285(1), shall be either the period of time remaining under the original statute of limitations or 3 years from the date of the last payment made under s. 885.285(1), whichever is greater."

As in Gurney v. Heritage Mutual Insurance Co. , 188 Wis.2d 68, 523 N.W.2d 193 (Ct. App. 1994), there is no question that, regardless of fault or liability, American Family will make payments based on its medical expense coverage contained in the policies at issue.

All references to the Wisconsin Administrative Code are to the December 2017 version unless otherwise noted.

The rule regarding conflicting statutes (or rules) also states that conflicts between statutes are not favored, and courts are to harmonize statutes to avoid conflicts when a reasonable construction of the statutes permits that. Jones v. State , 226 Wis.2d 565, 576, 594 N.W.2d 738 (1999). It could be argued that the opinion seeks just such harmonization, but as stated I do not believe that the opinion's construction of Wis. Stat. § 632.32(4)(a)2. is reasonably permitted by the statute's plain language.